Richard W. DYKE, d/b/a Western
Stations Co., Plaintiff,

v.

GULF OIL CORPORATION, a Pennsyl-
vania Corporation, Defendant,

and

Department of Energy,
Defendant-Petitioner.

COLVIN OIL COMPANY, an Oregon
Corporation, Plaintiff,

v.

GULF OIL CORPORATION, a Pennsyl-
vania Corporation, Defendant,

and

Department of Energy,
Defendant-Petitioner.

Kenneth O. OWEN, d/b/a Truck Towne
Station, Plaintiff,

v.

ATLANTIC RICHFIELD COMPANY, a
corporation, Defendant,

and

James R. Schlesinger, Secretary of
Energy, Defendant-Petitioner,

Champlin Petroleum Company,
amicus curiae.

Nos. 9–41 to 9–43.

Temporary Emergency Court of Appeals.

Argued March 2, 1979.

Decided June 5, 1979.

558

John P. McKenna, Washington, D. C., with whom Ted P. Gerarden and Arthur E. Gowran, Dept. of Energy, and C. Max Vassanelli and Stephanie Golden, Dept. of Justice, Washington, D. C., were on brief for defendant-petitioner Government.

Neva T. Campbell, Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., was on brief for plaintiffs Richard W. Dyke and Colvin Oil Co.

Catherine C. McCulley, with whom J. Ronald Sandberg, Gulf Oil Corp., Houston, Tex., were on brief for defendant Gulf Oil Corp.

Gale P. Hilyer, Jr.,* Hilyer & Levinski, Seattle, Wash., was on brief for plaintiff Kenneth O. Owen.

Donald C. Smaltz, Los Angeles, Cal., with whom Robert L. Hess and Leighton M. Anderson, Smaltz & Neelley, Los Angeles, Cal., and John B. Merritt, Atlantic Richfield Co., Los Angeles, Cal., were on brief for defendant Atlantic Richfield Co.

Charles A. Zubieta, Fort Worth, Tex., with whom Kerry R. Brittain, Champlin Petroleum Co., Cecil E. Munn, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., Richmond C. Coburn, Coburn, Croft, Shepherd, Herzog & Putzell, St. Louis, Mo., and Alan E. Popkin, Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Chervitz, Clayton, Mo., were on brief for amicus curiae Champlin Petroleum Co.

Before CHRISTENSEN, ESTES and ZIRPOLI, Judges.

* Mr. Gale P. Hilyer, Jr., died after the submission of the case but before this opinion was filed.

CHRISTENSEN, Judge.

■ These cases originated as private damage actions in the United States District Court for the District of Oregon (Nos. 9–41 and 9–42), and the United States District Court for the Central District of California (No. 9–43). They were brought by the respective plaintiffs in reliance upon Section 210 of the Economic Stabilization Act of 1970 (ESA), as amended, 12 U.S.C. § 1904 note, and incorporated into the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751, et seq., by § 754 of that Act.[1] We granted leave for an interlocutory appeal in each case pursuant to 28 U.S.C. § 1292(b)[2] and Fed.R.App.P. 5, in the light of TECA Rule 1, upon certification by the respective courts of their orders refusing to drop the Department of Energy (DOE) as a party[3] on the basis of the following "controlling issue of law":

> Whether DOE is required to be joined as a party in private damage actions such as the case[s] at bar pursuant to the

TECA decision in *Longview Refining Company v. Shore,* 554 F.2d 1006 (Em. App.1977), *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977)?

This was the statement of the issue of law certified in Nos. 9–41 and 9–42. The statement in No. 9–43 was essentially the same, but *Air Products and Chemicals, Inc. v. United Gas Pipe Line Co.,* 503 F.2d 1060 (Em.App.1974), was cited in connection with *Longview.*[4]

These interlocutory appeals have been perfected and have been consolidated for the purposes of this proceeding.

In *Dyke* and *Colvin,* consolidated below, the plaintiffs who were resellers of refined petroleum products alleged that the defendant Gulf Oil Corporation overcharged them in sales of petroleum products in violation of Mandatory Petroleum Price Regulations, 10 C.F.R. § 212. In *Dyke,* defendant Gulf moved to dismiss the complaint for alleged failure of Dyke to exhaust administrative

1. § 210. Suits for damages or other relief

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

2. (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, . . .

3. The statute contemplates an interlocutory appeal from an order rather than solely on the basis of a certified question of law. While we are limited by the certificates to a consideration of the validity of the orders in question, we are not limited in considering such validity to the precise question of law certified. *See Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). *Cf.* 12 U.S.C. § 1904 note

§ 211(c), dealing specifically with the certification to this court of constitutional issues.

The orders in question involve refusals to drop the DOE as a party. In *Owen* the Secretary of Energy also was involved. In his first amended complaint Owen asserted a separate claim for mandamus against the Secretary. In granting leave to file this amended pleading the district court expressly ruled out any mandamus relief against the Secretary. The parties have argued, and we shall consider as to all cases, the basic question of joinder of the agency where no claim, as such, is stated against it or its representative.

4. *Gulf Oil Company* asserts that the DOE has broadened this issue in the reformulation: "Whether in private damage litigation brought pursuant to Section 210 of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note, the Department of Energy may be named as a defendant or involuntarily joined as a party." Considering the essential issue of the validity of orders in the light of the precedents cited and the particular circumstances presented, we see no significant difference in the statements. In determining whether the orders certified and accepted for interlocutory appeal are valid, we must of necessity consider their propriety not only as orders required but as permitted. It would not helpfully suffice to give the short but obviously correct answer as to whether joinder is required by *Longview* for future cases—"no".

remedies. The district court denied this motion and, instead, ordered the DOE to be joined as a party. In *Owen*, the plaintiff, an operator of a retail outlet, alleged in his original complaint and a first amended complaint naming the DOE as one of the parties defendant that he was overcharged by the other defendant, Atlantic Richfield Company (ARCO), for refined petroleum products. All plaintiffs sought damages for alleged overcharges. At varying stages the DOE was made a party in each case.[5]

In each case the DOE made an unsuccessful motion to dismiss for failure of the plaintiff to state a claim on which relief could be granted as against it, as well as a motion to be dropped as a party. Denials of the DOE's motions were grounded upon *Longview Refining Co. v. Shore, supra,* apparently against the district judges' own better judgments.[6]

The DOE points out that it has been joined as an involuntary party in numerous other private damage actions in the wake of *Longview,* although in none of them has any claim been asserted against it. The consequences of joinder, it says, have transcended any status as a nominal party with a limited role in the litigation, to a point of forced participation generally. It is claimed that if this situation is permitted to continue its already strained capacity to enforce the Mandatory Petroleum Price Regulations will be seriously impeded.

In further defining its position the DOE contends that it may not be involuntarily joined as a party to private litigation since as to it there is no "case or controversy", the federal rules do not authorize such joinder, Congress did not so intend in enacting relevant legislation, and involuntary joinder places an unacceptable burden upon the Department, threatening to break down its enforcement programs. It is further contended that this court's decisions do not mandate any such joinder, that administrative responsibilities may be frustrated by collateral estoppels, and that the Department's role in private litigation should be limited to participation as *amicus curiae.*

ARCO, a party to the California litigation, agrees with the DOE that *Owen* should be reversed, not because the DOE cannot be joined involuntarily in appropriate cases but because it did not need to be and should not have been in this instance. But ARCO suggests that an *amicus* role for the Government would not be appropriate because the Government would not be bound by any decree, and that intervention

---

5. In *Dyke,* the district court in denying Gulf's motion to dismiss for failure to exhaust administrative remedies ordered that the DOE be joined as a party. The plaintiff in *Colvin* had filed an amended complaint which named the DOE as a defendant. In *Owen* the plaintiff made the DOE a party defendant at the inception of the action.

6. If this [the joinder of the DOE as a party] were an issue of first impression, I would probably rule in the DOE's favor. I know of no case outside of this limited area in which a federal administrative agency has been made a defendant in an action between private parties.

. . . . .

I am bound to follow the TECA decisions. TECA has mandated that the DOE be made a party in these cases. . . .
*Dyke* and *Colvin* R. at 324–25.
The district court in *Owen* determined that *Longview* and the cases cited therein required denial of the DOE's motion to dismiss. The court, as well as counsel for the DOE, was apparently perplexed by our decisions:

Mr. Gerarden [for the DOE]: . . . If we have to be a full party and participate as a party defendant in every case, there is just no reason to have a private right of action.
. . .
The Court: Then how do you get around the cases that made your predecessors parties?
Mr. Gerarden: Well, its difficult, Your Honor, but I did cite in my memorandum other cases in cases of enforcement of regulations, where other courts of appeals have felt they were not.
The Court: . . . I really don't see, unless there is in the law a mandatory act the D.O.E. has failed to perform, that I have any jurisdiction to order the D.O.E. to do anything . . . or even to become an amicus curiae . . .
Mr. Hilyer [counsel for Owen]: . . . But we could go through a trial here without them as a party and T.E.C.A. could remand the case back because they are not a party.
The Court: The other solution is to let them be a party and have them appeal.
*Owen* R. at 158–59, 161.

would be adequate to protect its interests in most cases where participation would be justified.

ARCO is of the further view that Rule 19(a) may require the DOE to be a party to a private suit where it has (1) taken an adjudicatory posture with respect to the very violations charged or (2) where it has engaged in "substantial administrative proceedings" with one or both of the parties to the private litigation regarding the interpretation or application of a regulation in question. It says that should the DOE desire to participate in private actions in which the parties raise substantial issues concerning the interpretation of its regulations, it should intervene rather than "intermeddle" as an *"amicus curiae"*.

Dyke and Colvin take the position that the Government ordinarily should not be a party to section 210 litigation, but that the district court should determine in its discretion the extent of agency participation, if any, in the role of an intervenor or *amicus curiae*. It is contended by these litigants that the DOE's participation as a party in their cases will complicate and prolong the proceedings and unnecessarily delay adjudication, and that the danger of the agency's similar involvement in the future will have a chilling effect upon the filing of section 210 actions, stifling enforcement effects intended by Congress.

The contrary arguments of Gulf, Owen, and the *amicus curiae,* Champlin Petroleum Company,[7] are presented with varied emphasis but for the most part are similar:

Gulf agrees with the lower courts that the joinder of the DOE was mandated by *Longview* and argues that the agency has had substantial involvement in the facts of the *Dyke* and *Colvin* cases by virtue of ongoing investigations on legal issues related to those raised by the complaints; that

the federal rules permit joinder of a party against whom no claim for relief is asserted; that the requirements of Rules 19(a)(1) and 19(a)(2)(ii) are met; that without joinder complete relief between the parties will not be possible; that in the absence of joinder should Gulf prevail against Dyke and Colvin it might still be the subject of overlapping action by the agency, and that without joinder collateral estoppel could operate against Gulf by making its loss in one forum fatal to its position in another while making any victory in one inapplicable to the other. Gulf further contends that the burden of discovery is no excuse for the DOE's dismissal as a party by reason of the court's power to grant protective relief in avoidance of unreasonable burden upon a party.

Owen's arguments largely track those of Gulf. But additionally he contends that the absence of any express provision in the ESA for interlocutory appeals except with reference to restraining orders and preliminary injunctions, the tenor of section 211, and the decision of this court in *Exxon Corp. v. FEA*, 516 F.2d 1397 (Em.App.1975), preclude our exercise of jurisdiction over these appeals.[8]

*Amicus curiae's* position also mainly comports with that of Gulf. Added is the contention that the DOE's ability to attend to its responsibilities as a party litigant in these cases is confirmed by massive enforcement and restitution litigation it has separately undertaken.

## I

■ We first address the question raised by Owen concerning the appellate jurisdiction of this court.

*Exxon Corp. v. FEA* held in view of the particular wording of the ESA that appeals

---

7. The *amicus curiae* is defendant in a suit filed in 1975 in the *Eastern District of Missouri, Marine Petroleum Co. v. Champlin Refining Co.,* seeking damages in a § 210 action. On the authority of *Longview,* the *DOE* was added as a defendant in 1977.

8. Implicit, of course, in our granting leave for the DOE· to appeal in these cases was our conclusion that 28 U.S.C. § 1292(b) authorized the interlocutory appeals even though preliminary injunctions, restraining orders, or constitutional questions were not involved. But of course the question of jurisdiction is open to reconsideration.

from restraining orders and preliminary injunctions had to be taken, if at all prior to final judgment, upon certification by the district court pursuant to 28 U.S.C. § 1292(b), despite the general rule that such interlocutory appeals would lie as of right as to such orders. *See also Condor Operating Co. v. Sawhill,* 514 F.2d 351 (Em.App.), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1975). Both cases assumed appealability of orders such as these with which we are concerned upon certification by the district court and the granting of leave to appeal by this court pursuant to section 1292(b). They regarded the special provision of the Act concerning injunctive relief *pendente lite* not as a limitation upon the propriety of other interlocutory appeals but only upon appeals as of right which otherwise could have been taken without certification or leave with respect to orders granting or denying restraining orders or preliminary injunctions. There is nothing in our prior decisions, nor in the ESA, to foreclose interlocutory appeals as to other issues.[9] Indeed, in *McCulloch Gas Processing Corp. v. Canadian Hidrogas Resources, Ltd.,* 577 F.2d 712 (Em.App.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978), we allowed and decided such an interlocutory appeal without question and without discussion.

Owen further argues that the section 211(c) provision for certification of constitutional questions by the district courts to this court furnishes indication that Congress intended only constitutional questions to be certified for interlocutory appeal; otherwise, says Owen, there would be no need for any special provision. This argument misconceives the peculiar status of constitutional problems in the judicial review system adopted by Congress, which mandated the certification of constitutional questions to this court under specified conditions.[10]

Owen further argues that "inasmuch as no order or regulation has been enjoined no appeal would be, as yet, permitted . . ." and that

> [t]he provisions of 211(b)(2) [of the ESA] specify how one may appeal a judgment of a district court. No final order has been entered, so there can be no appeal under § 211(b)(2) which provides for appeals from district courts within thirty (30) days after entry of judgment.

The provision cited was designed to deal only with appeals to TECA from final judgments of the district courts and does not preclude interlocutory appeals under the condition stated in section 1292(b). We therefore turn to the merits of the interlocutory appeals.

## II

The question of the joinders of the DOE in these cases was not set at rest by our decisions in *Longview Refining Co. v. Shore,* 554 F.2d 1006 (Em.App.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); *Air Products and Chemicals, Inc. v. United Gas Pipe Line Co.,* 503 F.2d 1060 (Em.App.1974); and *Associated General Contractors of America, Inc. v. Laborers International Local 612,* 476 F.2d 1388 (Em. App.1973).[11]

---

**9.** *See* § 211(b) of the ESA providing among other things that, with exceptions not applicable here, "the court [TECA] shall have the powers of a circuit court of appeals with respect to the jurisdiction conferred on it by this title." TECA Rule 1 provides: "Except as to matters specifically covered by these Rules, the Federal Rules of Appellate Procedure shall govern the procedure in all cases or proceedings in this court." In similar context we have held in recognition of the discretionary nature of interlocutory appeals generally that this court may, but is not compelled to, accept a statutory certificate for an interlocutory appeal from a district court. *Spinetti v. Atlantic Richfield Co.,* 552 F.2d 927 (Em.App.1976), *rehearing*

granted as to an associated case on other points, *Atlantic Richfield Co. v. Fed. Energy Admin.,* 556 F.2d 542 (Em.App.1977).

**10.** (c) In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. . . .

**11.** In *Spinetti v. Atlantic Richfield Co.,* 552 F.2d 1401 (Em.App.1975), we noted but did not reach the problem of whether the FEA should have been joined as a party in that private action in view of the dismissal of the appeal.

*Associated General Contractors,* in which we first applied a rule of joinder in a private action, involved the validity of an agency order. The ruling was carefully limited:

> While the agencies in this case may not be regarded as being indispensable for every purpose so as to have required dismissal of the action in their absence, they should be made parties . . . before this litigation can be concluded. To further breathe life into the legal system with which we are concerned and as a correlative of the principle applied in *City of New York* [468 F.2d 1401 at pp. 1402–06] we hold that in the absence of equivalent representation or other extraordinary circumstance which we cannot now anticipate no order of an economic stabilization program agency should be mandated or subjected to invalidation in any judicial proceedings unless that agency has been made party to such proceedings.

476 F.2d at 1406–07.

That the object of joinder in that case was not to gratuitously constrain the agency but to seek its expertise and insight in such limited context is again apparent from footnote 41:

> *Cf. Order of Railway Conductors of America v. Pa. R. Co.,* 323 U.S. 166, 65 S.Ct. 222, 89 L.Ed. 154 (1944). [In that case the Supreme Court held that a National Mediation Board's order could not be voided in the absence of the board as a party and that, by reason of failure to appeal the dismissal of the board by the district court, the board could not later be joined. 323 U.S. at 171, 65 S.Ct. 222.] The agency rulings of course have been established, but the agencies as parties should be afforded reasonable opportunity to explain them before the district court in any light they believe would be consistent with their validity; and upon the determination of validity or invalidity by the district court they manifestly should be heard as to the form of the declaration and any supplemental relief

that might be necessary to effectuate the judgment.

476 F.2d at 1406–07.

Similarly in *Air Products,* while no direct attack upon the validity of an agency order was involved, the court made clear that joinder of the CLC was in view of the peculiar circumstances therein involved and for the purpose of seeking its expertise. And the assistance of the agency in this context was invited rather than required: "In any event, the district courts may find it necessary to decide, aided by any expression and explanation of administrative views that shall be tendered, whether the increases were adequately justified as required by 6 C.F.R. § 300.303." 503 F.2d at 1064.

*Longview* itself, although interpreted by the district courts and some of the parties here as promulgating a general and invariable rule of joinder, actually involved an *ad hoc* direction. The confusion of administrative action on closely related problems was emphasized. Far from purporting to lay down any general rule, much less mandating joinder of the agency in all section 210 cases, this court observed that

> [o]n remand, the district court should order the FEA, which has expertise and responsibility with respect to interpreting, applying, and enforcing the statutes and the pricing regulations in controversy, including corrective action for any unlawful price increase passed down the stream of commerce by a plaintiff, to be joined as a party to this litigation.

554 F.2d at 1024.

It is reading altogether too much into this statement to suggest that its description of the agency's powers indicated that those powers necessarily were to be exercised in purely private litigation, much less that the agency should be generally joined as a party to such litigation for that or any other purpose.

Differences in the situations of those cases and the ones with which we are now confronted are manifest. There was then no indication that agency joinder would be interpreted as a general rule other than

when courts were considering the mandating or invalidation of agency orders. There was the assumption that agency participation for the purposes stated would be willingly extended. There was no expressed or other expectation that the agency would be compelled to assume a plenary role as an adversary party. There was no suggestion that joinder might compromise or circumvent proper application of the doctrines of exhaustion of administrative remedies or primary jurisdiction or that any ongoing agency proceedings would be obstructed. There was no suggestion or consideration of alternatives for serving the expressed purpose of recourse to agency expertise. Possible consequences of collateral estoppel upon ongoing administrative proceedings did not appear. The directions for joinder were forthcoming after it had been determined on appeal that the prior proceedings in the lower courts were largely abortive. There was reason to believe that joinder would simplify and expedite, rather than complicate and delay, the termination of the cases in question.

The issues and the related purposes of the litigants are now presented in an entirely different light.[12] Far from blindly applying, or reviewing those decisions upon the basis of considerations not there involved, we must look afresh at the contentions of the parties in the cases now before us.

### III

■ We cannot agree with Gulf, Owen, and the *amicus curiae* that the legislative history of the ESA supports the idea that in a private action under section 210 the administrative agency must or should be joined as an involuntary defendant. The scant record directly bearing upon the point suggests quite the contrary.[13] Express

---

12.　If the DOE is dismissed as a party defendant, complete relief would not obtain [sic] by any of the parties. The defendants might be subject to the subsequent DOE audit encompassing the very issues raised in the present litigation, thereafter accompanied by subsequent remedial action required by DOE of the defendants. Of course, a defendant might raise the defense of collateral estoppel, but because the DOE has not been joined in this action, the DOE could counter that it is not bound by an action in which it was not a party.

Owen's Brief at p. 8.
　If DOE is not bound by the decision in a § 210 case, DOE could obtain a judgment directing duplicative restitution or imposing duplicative liability upon Gulf by requiring adjustments to prices charged other customers or to the calculation of costs and cost recovery under the refiner price rules. Similarly, DOE could obtain a judicial or administrative interpretation or application of the applicable regulations which was inconsistent with the determination of the trial court in this proceeding.

Gulf's Brief at p. 10.
　Because the issues involved in § 210 cases are often complex and complicated, judicial resources will be conserved if DOE is a party and all discovery disputes are resolved in a single forum.

*Id.* at p. 12.
　Further, in the interest of judicial economy, if a refund of overcharges is ordered in the case, the presence of DOE as a party will facilitate the passthrough to the consumer of the overcharges.

*Amicus Curiae's* Brief at p. 5.
　The DOE is presently joined involuntarily to forty pending Section 210 actions . . . The DOE's Office of Special Counsel is currently conducting intensified audits of major refining companies, and in addition, other DOE staff are conducting enforcement investigations of numerous producers, refiners, and resellers of petroleum products. If, when a person exercises his right to bring a Section 210 proceeding and the DOE is made an involuntary party, the parties refuse to respond to administrative requests for information pertinent to DOE audit investigations [as it is asserted Gulf has done] DOE's enforcement program will be frustrated. The problems thus caused become even more critical in view of the nationwide or regional scope of many DOE enforcement investigations . . . . These consequences run directly counter to the provisions of the ESA and the intent of Congress. Instead of having two complementary avenues of enforcement [agency enforcement and private actions] the government is now routinely required to participate in purely private disputes to the detriment of its own obligations in cases of nationwide enforcement . . .
　Involuntary joinder of the DOE also raises the possibility that a Section 210 judgment might constitute an estoppel in a subsequent enforcement action by the DOE against a party to a Section 210 case. . . .

DOE's Brief at pp. 8, 10.

13.　Aside from the legislative policy and structure implicit in the Act itself, which seems inhospitable to those appellees' interpretation,

statutory references to agency intervention in different situations furnish additional support for the DOE's position.[14] The section 211(b) admonition of the Congress to this court with respect to expedition of adjudications emphasizes our duty to avoid if possible any wholesale commingling of agency procedures with private actions at the trial level which would foster delay both within the agency and in the courts. Moreover, practice in other regulated fields, where private actions traditionally have proceeded without involvement of the regulatory agencies as parties, could not have been lost upon Congress.[15]

## IV

■ The Rules of Civil Procedure, of course, must be observed for it is undeniable that Congress contemplated the agency, consistent with controlling statutes, to be subject to them in civil litigation with respect to possible party status, *inter alia.* Admittedly no claim was stated against the DOE on which relief could be granted in any of the cases.[16] And it is obvious from the absence of a claim which would survive a Rule 12(b)(6) motion, that there has not been asserted against the DOE either jointly, severally or in the alternative, any right to relief, even apart from the required commonality, to satisfy the essentials of a Rule 20(a) joinder.[17] Nor did Rule 21 under the circumstances of these cases furnish an independent basis for joinder; rather it provided an appropriate means for the dropping of the DOE as a party if the propriety of its previous joinder was not otherwise established.[18]

While these other rules concerning involvement as a party supply context and certain broad intendments, it is to Rule 19(a) [19] that we must look primarily for any

the only expression of pertinency is contained in a Senate report:

> Section 210 provides a traditional method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering a legal wrong to bring a treble damage action against a violator.
> This action is intended to be brought by private persons against other private persons. The Government will not bring such action nor be the subject of one.

S.Rep.No.92–507, 92d Cong., 1st Sess. 2, *reprinted in* [1971] U.S.Code ·Cong. & Admin. News, pp. 2283, 2291.

14. *See e. g.,* § 206 granting the agency subpoena power; § 207(b) dealing with procedures of the agency for the interpretation, modification or rescission of, or exception or exemption from, rules, regulations and orders of the agency; and § 209 concerning requests by the agency to the Attorney General for the bringing of actions to enjoin the violators of agency regulations or orders, in which such action in addition to injunctive relief the courts may order restitution. *See also* § 211. Provision for investigations and the issuance of remedial orders subject only to review in the district court and this court is further indication of the intended separation of agency and private actions.

15. *See* note 28 *infra.*

16. Rule 12(b)(6) provides that among the defenses which may be asserted by motion is failure of the complaint to state a claim on which relief can be granted.

17. Rule 20(a) provides in part with respect to permissible joinder:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction . . . or occurrences and if any question of law or fact common to all defendants will arise in the action. . . .

18. Rule 21 provides that misjoinder of a party is not ground for dismissal of an action but that "[p]arties may be dropped or added . . . at any stage of the action and on such terms as are just."

19. Rule 19(a) provides in pertinent part:

> (a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. . . .

justification of continuing the agency as a party to this private litigation. In light of other validity issues in *Associated General Contractors* and the extraordinary circumstances in *Longview* and in *Air Products,* we suggested joinder on remand with express reference in *Air Products* to Rule 19(a)(1).

It is true that a claim need not be invulnerable to a Rule 12(b)(6) motion by a particular party to sustain its joinder, provided that the requirements of Rule 19 or 20 otherwise are met. Complete relief in the actions, however uncertain the proof might be with or without the DOE's presence, can be accorded among those already parties in these cases.[20] The DOE claims no interest relating to the subject of the action the ability for protection of which would be impaired or impeded.

Gulf and Owen argue that without the presence of the DOE they would be subject to a substantial risk of incurring double, multiple or other inconsistent obligations. We do not see substance in this contention unless they are entitled to bring to a complete halt by such joinder the administrative auditing, investigation and remedial action which the agency could carry on independently under controlling statutes. For reasons hereafter to be discussed, this cannot be permitted; that joinder was sought or could be used to accomplish such result itself would be a strong argument against its allowance. Any restitution with respect to the issues of the present cases could be taken into account in any subsequent administrative order dealing with the same liability, and there could be corresponding adjustment should a court's judgment come first unless overriding public policy intervenes.[21] But to parlay the necessity for

such adjustments with reference to the relatively narrow issues in particular cases into the blocking of the agency's broad investigative, adjudicatory and enforcement powers, or to attempt to reconcile them all in advance within the framework of one or forty private actions, would be quite unthinkable. Moreover, the inconsistent obligation contemplated by the rule refers to judgments both of which cannot reasonably be complied with, rather than to those that can be adjusted and reconciled.[22]

The facilitation of access to information from the agency through party discovery has been urged upon us as a reason for joinder within the guidelines of Rule 19. The agency does not have to be a party to be reasonably subject to the processes of the court with respect to discovery. Indeed, discovery from non-parties is an important aspect of the rules.[23] Agency relationship to a judicial proceeding other than as a source of discoverable information must be shown to justify its joinder.

ARCO's contention that "substantial administrative involvement of DOE" with a regulation or case in question supplies a standard for joinder under Rule 19, raises more questions than it answers. If there were no prior involvement of the agency, its expertise and guidance could be even more helpful to the court. If administrative remedies or other proceedings had substantially progressed, additional reasons might exist for avoiding interruption by premature court involvement. And, as the DOE points out, such a test would furnish a bootstrap device readily convenient, in view of administrative procedures readily open to refiners and dealers, for the invocation of administrative remedies to require the DOE to be made a party by reason of its resulting

---

**20.** The term "complete relief" refers to relief as between the persons already parties and not as between the parties and the absent person whose joinder is sought. 3A Moore's Federal Practice ¶ 19.07–1[1], at 19–128 (2d ed. 1978).

**21.** *See e.g., SEC v. Penn Cent. Co.,* 425 F.Supp. 593, 598–99 (E.D.Pa.1976).

**22.** *See* 3A Moore's Federal Practice ¶ 19.07–1[2.–2], at 19.148 (2d ed. 1978).

**23.** Our decision in *Standard Oil Co. v. Dep't of Energy,* 596 F.2d 1029 (Em.App.1978), has been pointed to as demonstrating the importance of this element. There the validity of agency orders was under attack. Administrative remedies had been exhausted. Section 210 actions were not involved. *Cf. e.g., Cal. Molasses Co. v. Cal. & Hawaiian Sugar Co.,* 551 F.2d 1230 (Em.App.1977).

"substantial involvement". Agency regulations and orders likely will be involved in most private actions to a lesser or greater degree. Indeed, a doctrine of exhaustion of administrative remedies or primary jurisdiction may mandate recourse to the agency as a threshold bar to court action. The greater the agency's involvement the more inappropriate might be the joinder of the agency before the administrative remedy has resulted in final agency action.[24] Thus, any "substantial involvement test" finds support neither in Rule 19(a) nor in practicality.

There remains to be considered specifically whether on the facts of the present cases joinder was mandated or authorized by subdivision (a)(1) of Rule 19 because in its absence complete relief could not be accorded those already parties. This was the express basis of ordered joinder in *Associated General Contractors,* as pragmatically extended by *Air Products* and *Longview* to afford convenient access to the expertise of the agency in view of abortive proceedings in the district courts. We have concluded that such unopposed pragmatic extensions of the reach of Rule 19 in those isolated contexts must here give way to a more pervasive pragmatism.[25] The records before the district courts did not sufficiently indicate Rule 19(a) situations to warrant the DOE's retention as a party, especially in view of countervailing considerations.

**V**

Objections to a general rule of joinder of the DOE as a party in private litigation are impressive. The insistence in opposing briefs on having the Government bound by private judgments merely confirms for the DOE its concern about the impact of joinder in view of the possibilities of estoppel.[26] The problem of its possible cross claims and appeals on points that really might be collateral to the private litigation could further confound a hodge-podge. As a practical matter the timing and scope of enforcement would become subject to the vagaries of private litigation. Audits and investigations might not be allowed to run their normal courses,[27] and the agency's option to proceed administratively could be compromised. "The Government", the DOE points out, "would be forced to take positions and initiate actions, often prematurely and without adequate resources, because of the accident of its entanglement in private litigation." DOE Reply Brief at 5. Any wholesale commingling of discrete administrative and judicial responsibilities in public and private actions likely would hinder, disrupt, and render torpid the statutory scheme for expedited enforcement.

The commingling of private and agency enforcement devices for which Congress has made separate provision would represent a sharp departure from long standing separations in the antitrust and securities fields.[28]

---

**24.** *See City of N. Y. v. N. Y. Tel. Co.,* 468 F.2d 1401 (Em.App.1972).

**25.** It has been observed in a related context that pragmatic considerations in the light of an equity and good conscience test should be controlling in the interpretation of Rule 19 and that the list of specific factors in the rule was not intended to be exclusive. 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1608 (1979). *See also Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Schutten v. Shell Oil Co.,* 421 F.2d 869 (5th Cir. 1970).

**26.** *See Parklane Hosiery, Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

**27.** In connection with the agency's general investigation of Gulf's practices Gulf has declined to furnish requested information to the agency with the statement:

> The information requested concerning R. W. Dyke is not being furnished since Gulf's gasoline pricing to this customer for the time period involved in your audit is subject to pending litigation. The U.S. Government is a party to that suit. As a consequence Gulf suggests that this information, if necessary to your office, be obtained through discovery procedures that may be available to the Government as a party in that suit.

*Dyke* and *Colvin* R. at 440–441.

**28.** This separation of public and private remedies corresponds to different remedies provided by the antitrust laws. *See* 15 U.S.C. §§ 4, 9, 15, 21 and 1311–1314, as amended. Also in the securities laws: 15 U.S.C. §§ 77i, 77k, 77*l*, 77*o*, 77s, 77t, 77v, 78r, 78t, 78u, 78y, 78aa. Our attention has been called to no case in these fields where the regulating or investigating agency has been made an involuntary party in

The implication of a general rule of joinder of the agency here, if widely accepted for purposes urged by appellees, could also have far ranging implications in other fields.

We are not unmindful from the viewpoints of both the court and private litigants of the frequent helpfulness of agency expertise, the frustrations of incomplete or delayed agency action and the convenience of access to the agency's views which the party status of the agency would provide in private actions. Yet a proper solution most often may be found in more appropriate alternatives.

## VI

■ Rule 24(b)[29] supplies specific method and criteria for agency participation in private enforcement actions. Except where the validity of an order of the agency is under attack, the situation for agency involvement in a private suit, indeed, the situation of these cases, could hardly be described more nicely when an agency elects to intercede than by the language of the intervention rule, as "[w]hen a party to an action relies for ground of claims or defense upon any statute or executive order administered by a federal . . . agen-

cy or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order . . ."

That intervention in the situation described by the rule would be at the election of the agency,[30] does not warrant the making of joinder mandatory for no better reason than that intervention would serve some useful purpose. The salutary rule of deference of courts to agency decisions[31] should not be distorted to become a rule of unreasonable judicial dependence upon agency joinder in private cases generally.

In the doctrines of exhaustion of administrative remedies and primary jurisdiction also may be found solutions for which joinder of the agency in private litigation may be found to be only an ineffective and complicating counterfeit. The respective doctrines, though essentially different in applicability, are closely related.[32] As an alternative to the involuntary joinder of the DOE as a party to private litigation, the applicability of one or the other of them must be considered by the district court.

Related is the need for clarification of agency positions with reference to existing orders or regulations.[33] The statute pro-

a private enforcement action. The claimed distinction urged by Gulf that the SEC, unlike the DOE, does not have restitution powers, is not valid. *See, e.g., SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1307–08 (2d Cir.), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971); *SEC v. Penn Cent. Co.,* 425 F.Supp. 593, 598–99 (E.D.Pa.1976), *supra.*

**29.** (b) *Permissive Intervention.* Upon timely application any one may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. *When a party to an action relies for ground of claims or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.* In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudica-

tion of the rights of the original parties. [Emphasis added.]

**30.** *Cf. Hubert v. Saucier,* 347 F.Supp. 152 (N.D. Ga.1972).

**31.** *See e.g., Mr. Magic Car Wash, Inc. v. Dep't of Energy,* 596 F.2d 1023 (Em.App.1978), one of our more recent cases applying the deference rule.

**32.** *See City of N. Y. v. N. Y. Tel. Co.,* 468 F.2d 1401 (Em.App.1972), *supra; Anderson v. Dunlop,* 485 F.2d 666 (Em.App.), *cert. denied,* 414 U.S. 1131, 94 S.Ct. 871, 38 L.Ed.2d 756 (1974). *Cf. United States v. Western Pac. R.R.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Orange & Rockland Util., Inc. v. Howard Oil Co.,* 416 F.Supp. 460 (S.D.N.Y.1976). *See generally,* 3 K. Davis, Administrative Law Treatise, Primary Jurisdiction §§ 19.01–19.09; Exhaustion §§ 20.01–20.10 (1958), with 1970 supplement.

**33.** In *Am. Nursing Home Ass'n v. Cost of Living Council,* 497 F.2d 909 (Em.App.1974), it was observed that one of the most important factors with reference to application of the ex-

vides for agency interpretations, apart from judicial proceedings,[34] and appropriate means have been provided by agency regulations for corresponding interpretations and orders subject to direct review by the district court.[35]

Only recently this court has taken occasion to commend in another connection the avoidance of action which "if allowed, would unnecessarily frustrate the agency's investigative and, ultimately, compliance enforcement efforts", and the "speedy resolution of cases brought under the [ESA]", citing *Bray v. United States,* 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975).[36] Agency joinder in these cases likely would promote neither purpose.

## CONCLUSION

■ We thus hold on the issue certified by the district courts that the DOE was not

required to be joined as a party by reason of our prior decisions. And it is our opinion over the objection of the agency it ordinarily may not be joined as a full-fledged party in section 210 actions, except in *Associated General Contractors* situations [37] or under other compelling circumstances not shown here.[38] Justification for joinder may be negated by failure of the district court to consider, and when more appropriate to avail itself of, the possible alternatives of intervention, *amicus curiae* appearance, the principles of exhaustion of administrative remedies and primary jurisdiction, non-party discovery or other devices falling short of plenary joinder of the agency as a party.[39]

Although we recognize, as we did in our prior decisions, that Rule 19(a) joinders involve flexible considerations and reasonable discretion, the circumstance here reminds us that justification must be found not only within theoretical boundaries and the im-

haustion doctrine is whether the resulting administrative record would be of benefit to proper resolution of the issues in controversy before the court.

**34.** Note 14 *supra.*

**35.** *See Atlantic Richfield Co. v. Fed. Energy Admin.,* 556 F.2d 542 (Em.App.1977), and *Energy Reserves Group, Inc. v. Dept. of Energy,* 589 F.2d 1082 (Em.App.1978), dealing respectively with two types of "Interpretive Orders" authorized by 10 C.F.R. subpart F, §§ 205.80–205.86 and subpart K, §§ 205.150, 154. *See also Delta Refining Co. v. Fed. Energy Admin.,* 559 F.2d 1190 (Em.App.1977), as one of our numerous decisions dealing with exception relief.

**36.** *United States v. Southwest Nat'l Bank,* 598 F.2d 600 (Em.App.1979).

**37.** Needless to say, merely pretensional, insubstantial or manipulative claims of the invalidity of agency orders as an excuse for improper joinder of the agency should not be accepted.

**38.** There has been no issue raised in these cases concerning the validity of agency action, but we cannot acquiesce in the DOE's contention, brief at 3, note 3, that "claims challenging [its] regulatory action must be brought under section 211 of the ESA." *See e.g., Griffin v. United States,* 537 F.2d 1130 (Em.App.), *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 286 (1976); *McCulloch Gas Processing Corp. v. Canadian Hidrogas Resources, Ltd.,* 577 F.2d 712 (Em.App.), *cert. denied,* 439 U.S. 831, 99

S.Ct. 109, 58 L.Ed.2d 126 (1978). *Cf. Associated General Contractors, supra.* The requirement expressed in the latter case with reference to the joinder of the agency in the circumstances stated is reaffirmed whether arising as will usually be the case in § 211 actions, or essential to a decision in private litigation. We need not reach the question of whether resort to the doctrines of primary jurisdiction or exhaustion of administrative remedies may provide in private suits the "equivalent representation or other extraordinary circumstance" envisaged by *Associated General Contractors* as an exception to the necessity of agency joinder.

**39.** What has been said is not intended to constrain the independent judgment and discretion of the trial courts but rather to repair apparent misapprehension of our prior decisions. We do not believe it possible, nor do we undertake to lay down any "bright line rule" for other cases or for further proceedings upon remand of these cases. With due regard for the considerations indicated, the district courts should determine the extent, if any, of the DOE's participation in § 210 actions in avoidance of undue delay or prejudice to the original parties and unjustified impairment of agency functions and in the promotion of "the interest of the courts and the public in complete, consistent and efficient settlement of controversies." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 739, 19 L.Ed.2d 936 (1968), *supra.*

mediate utility of the rule but in the purposes, necessities, likely effects and other pragmatic considerations on balance.

We conclude that the district courts erred on the respective records before them in refusing to drop the DOE as a party.

REVERSED and REMANDED for further proceedings in harmony with this opinion.