The TRESLER OIL COMPANY,
Plaintiff,

v.

CHAMPLIN PETROLEUM
COMPANY, Defendant.

No. C–1–78–781.

United States District Court,
S. D. Ohio, W. D.

Jan. 22, 1982.

William H. Bode, Alfred Lawrence Toombs, Washington, D. C., John J. O'Hara, co-counsel, Covington, Ky., Leo J. Breslin, trial counsel, Cincinnati, Ohio, for plaintiff.

Lawrence D. Walker, Robert Stachler, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

SPIEGEL, District Judge.

This case came for consideration of defendant's motion for transfer or stay (doc. 62), plaintiff's memorandum in opposition (doc. 68) and defendant's reply memorandum (doc. 69). For the reasons set forth below we find that defendant's motion to transfer should be granted.

This is an action to recover alleged price overcharges, treble damages, consequential damages and attorney fees resulting from sales of gasoline, kerosene and fuel oil made by the defendant, Champlin Petroleum Company (Champlin) to the plaintiff, Tresler Oil Company (Tresler).

Plaintiff alleges that Champlin charged prices in excess of those permitted by certain price control regulations promulgated under the Economic Stabilization Act, 12 U.S.C. § 1904 and the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. §§ 751 et seq. 10 C.F.R., Parts 210–212. The regulations require that all sellers of petroleum and petroleum products determine, under a formula set forth in the regulations, the maximum allowable price it may charge each class of purchasers for a particular product. The maximum allowable price is the weighted average price at which such product was lawfully priced in transactions with each class of purchasers on May 15, 1973. Tresler alleges that Champlin improperly classified it with eleven other customers of Champlin. Tresler alleges that it constitutes a separate, single-member class of purchasers. This improper classification allegedly resulted in overcharges to Tresler, a failure by the defend-

ant to preserve other customary price differentials in sales to the plaintiff after May 15, 1973 and an improper change in the credit terms, all in violation of the regulations.

Champlin's primary defense is that the regulations upon which Tresler's claim is based are so vague and ambiguous so as to be unconstitutional.

On September 9, 1977 the Federal Energy Administration (FEA) issued a remedial order finding that Champlin had violated the mandatory petroleum price regulations by calculating its weighted average May 15, 1973 selling prices of motor gasoline to eleven cargo lot purchasers on the basis of an improper class of purchaser determination. Champlin had included the eleven cargo lot purchasers into a single class. The remedial order separated the customers into nine separate classes of purchaser categories and directed Champlin to refund overcharges in the amount of $16,571,368.00 and to compute all future maximum allowable prices on the basis of the revised class of purchaser categories. Tresler was one of the eleven companies affected by the remedial order and was placed in a single-member class of purchaser category.

On October 17, 1977 Champlin filed an appeal from the remedial order with the Office of Hearings and Appeals (OHA) of the Department of Energy (DOE), successor to the FEA. During the pendency of that appeal Tresler filed this action on December 19, 1978, alleging price and other violations of the regulations. Tresler also intervened in Champlin's appeal from the remedial order and requested that the order be modified to include a finding that Champlin violated the price regulations by terminating a one (1%) percent discount it had received from Champlin prior to May 15, 1973 for making payments to Champlin within ten days of the invoice date.

On May 21, 1979 the OHA issued a decision and order in which it vacated a part of the remedial order and remanded the matter to the Office of Special Council (OSC), the enforcement arm of the DOE, for further proceedings. The substance of the May 21st order is that the class of purchaser categories established by the remedial order were not proper. The OHA instructed the OSC to re-classify the purchasers into four classes rather than nine. Tresler was placed into a class with one other purchaser. The matter was remanded to allow Champlin an opportunity to calculate the maximum allowable price it could charge these classes of purchasers, subject to audit by the OSC. Champlin was to submit its calculations within forty-five days. Additionally, the OHA ruled that the Equal Application Rule was valid and should be applied in determining the maximum allowable price. The OSC also was to determine whether the purchasers absorbed the loss due to the overcharges or passed them on to their own customers. In cases where the costs were passed on refunds were to be made.

With regard to Tresler's special complaint the OHA found that the one (1%) percent discount was not shown by the evidence to be the prevailing credit term to Tresler's class on May 15, 1973. Plaintiff's request, therefore, was denied.

The OHA directed the OSC to issue a modified remedial order in compliance with its decision and order and in the precise manner specified. It concluded that because "This decision has exhaustively addressed and resolved all of the disputed issues on the merits raised by Champlin and the intervenors, we anticipate that any further review of the modified remedial order will be strictly limited to whether the modified remedial order conforms to the requirements of this decision."

In May of 1979, Champlin sought judicial review of the DOE order in the United States District Court for the Northern District of Texas. Champlin instituted the case of *Champlin Petroleum Company v. Department of Energy et al.*, (CA-4-79-210E). Evidence presented to this Court indicates that case has been stayed pending final agency action.

On July 22, 1980, OSC issued a modified remedial order pursuant to the remand of the OHA. Champlin filed a new appeal

with OHA from this modified remedial order, which is still pending. A hearing in this matter was scheduled for December 2, 1981. On November 5, 1981 Champlin filed this motion to transfer claims number 1, 2, 3, 4, 5, 6 and 8 in the case of *Tresler Oil Company v. Champlin Petroleum Company*, to the United States District Court for the Northern District of Texas, Ft. Worth Division, or in the alternative, to stay those seven causes of action until the completion of *Champlin Petroleum Company v. Department of Energy* and *Marine Petroleum Company v. Champlin Petroleum Company*, Case No. CA–4–81–19K, a related case is now pending in the Texas Court.

Defendant cites the case of *Exxon Corp. v. United States*, 655 F.2d 1112 (TECA 1981) as controlling. Defendant contends that in *Exxon* the Temporary Emergency Court of Appeals (TECA) laid down a general rule that litigation involving the same parties and the same DOE regulations cannot simultaneously proceed in two different District Courts; one of the Courts must either stay its proceedings or transfer the case to the more appropriate forum.

Champlin argues that the Ft. Worth Court is the more appropriate forum for a number of reasons. Foremost is the fact that the Department of Energy is a party to the Ft. Worth litigation, but is not a party to the instant case. Champlin asserts that Tresler is attempting, in this lawsuit, to enforce the remedial order of the DOE and that Champlin cannot attack the validity of that order unless the DOE is made a party to this action. Additionally, Champlin notes that Tresler actively participated in the DOE proceedings against Champlin which resulted in the order from which Champlin seeks judicial review. Because the outcome of the Ft. Worth proceeding will be binding on all parties and because there is proper jurisdiction and venue in Texas as to all parties, Champlin argues that the Ft. Worth Federal District Court is the more appropriate forum to decide all of these related cases. In the alternative, Champlin urges us to stay any proceedings in this case so as to prevent duplicative litigation and the risk of inconsistent adjudications. A stay of proceedings was the remedy ordered by TECA in the *Exxon* case under similar circumstances.

Tresler opposes Champlin's motion and argues that it would only serve to delay final resolution of its claims against Champlin and otherwise cause great harm and inconvenience to the plaintiff. Tresler denies that it is seeking enforcement of the DOE order and asserts that many other issues are involved besides the class of purchasers rule as applied to purchasers of regular gasoline. Tresler argues that *Exxon* did not lay down a general rule but that the rule is limited to the specific facts of the case. Tresler also argues with a great deal of persuasion that its choice of forum should prevail unless the defendant carries its burden of convincing this Court that a transfer of venue is justified and would further the interest of justice.

The critical factor in *Exxon* was that the same pricing and regulatory issues were pending in two separate Courts. There is no question that the same pricing and regulatory issues also are pending before this Court and before the District Court at Ft. Worth, Texas. We agree with plaintiff that the facts of *Exxon* are not identical to the facts of the instant case, but we believe that they are similar enough to warrant a finding that the policy considerations expressed by TECA in *Exxon* apply in full to the case before us today.

The Court in *Exxon* was concerned with a number of issues:

1. Conserving judicial resources;

2. Preventing duplicative litigation;

3. Eliminating the risk of inconsistent adjudication;

4. That all parties would be bound by the decision of whichever Court proceeded with the litigation; and

5. Equitable factors that must be considered in deciding whether to upset plaintiff's choice of forum.

Tresler does not deny that some of the same questions involved here are in the Ft. Worth litigation but contends that many

other issues are raised by this lawsuit. We agree, but note that all but two of Tresler's claims are dependent upon the class of purchaser rule. Before Tresler may recover against Champlin in nine of the eleven causes of action it asserts in its amended complaint we would have to determine whether the regulations are valid, and if so, the proper class of purchaser category to which Tresler belongs, the maximum allowable price Champlin could lawfully charge Tresler based on the class of purchaser to which Tresler belongs, whether or not Champlin exceeded this lawful price, and whether Champlin unlawfully changed any other terms of conditions of sale in violation of the regulations. If the regulations are found to be invalid, as Champlin asserts, Tresler's right to recover anything from Champlin would be significantly different than if the regulations are found to be valid. Thus, the validity of the DOE regulations is the essential question in both actions. All of the questions outlined above are now pending before the DOE on appeal from the revised modified order or in the Ft. Worth District Court for judicial review of the remedial order.

There are a number of problems with respect to this litigation. In *Associated General Contractors of America v. Laborers International Union*, 476 F.2d 1388, 1407 (TECA 1973), TECA held that "No order of an economic stabilization program agency should be mandated or subject to invalidation unless that agency has been made party to such proceeding." While this action is not precisely an action to enforce an order of the DOE, we ultimately would have to agree or disagree with the order of the DOE with regard to the proper class of purchaser to which Tresler belongs and the validity of various other pertinent regulations ruled upon by the DOE. Under the ruling in *Dyke v. Gulf Oil*, 601 F.2d 557, 569 (TECA 1981), the DOE may not be involuntarily joined as a party to private litigation. *Dyke* also states that an agency is not a necessary party to private litigation based on agency regulations and that the Courts have the power to decide the validity of agency regulations without the agency being joined as a party *Id.* at 563–64.

Plaintiff reads *Dyke* to say that we may decide this case without the participation of the DOE. Defendant reads *Dyke* to support its position that we may not consider the DOE order unless the DOE is made a party. We agree with the defendant on this question. Plaintiff has asserted its intent to use the DOE order as evidence in this case. Any position we take with respect to the validity of the regulations will be either in agreement or disagreement with the DOE. Even if plaintiff would not raise the remedial order as evidence, we may not ignore an order of the agency charged by law with the responsibility of enforcing these regulations. The DOE has primary jurisdiction over this matter and has already decided a number of issues raised in this litigation. Because of the expertise of the DOE in these complicated regulatory matters we are bound to give considerable weight to their findings.

*Dyke* is distinguishable because in that case, there had been no order from the DOE with respect to the issues that were before the Court. *Dyke* held only that an agency need not be made a party to every lawsuit premised upon agency regulations. Where there is an agency order, however, that goes to the merits of issues pending before a Federal District Court, the Court must consider the findings of that agency. *Associated General Contractors* instructs us that we may not consider the validity of an order of any agency unless the agency is a party to the action. Thus, it would not be proper for us to proceed with this lawsuit under these circumstances.

The DOE is, however, a party to the litigation pending in Ft. Worth, Texas. Plaintiff was an active participant in the DOE proceedings that resulted in the remedial order from which Champlin seeks judicial review in the Texas District Court. Any decision by that Court will be binding on the DOE and all interested parties. Any decision in this Court would be binding only on Tresler and Champlin. If the two Courts were to come to inconsistent decisions Champlin would be in a position of not

knowing whether to follow the directive of this Court or the Texas Court. Potentially, we could find that the regulations are invalid and deny Tresler recovery. The Texas Court could then find that they are valid and order Champlin to pay over-charges to all of its customers, including Tresler. This is precisely the waste of judicial resources and risk of inconsistent adjudications that *Exxon* seeks to avoid.

We are mindful that plaintiff's choice of forum must be given considerable weight and the balance of convenience, considering all relevant facts, must be strongly in favor of a transfer before such may be granted. *Artisan Development v. Mountain States Development Corp.*, 402 F.Supp. 1312, 1314 (S.D.Ohio, W.D.1975). We believe that in this case, plaintiff's choice of forum is greatly outweighed by other factors discussed herein.

Plaintiff argues that it will be harmed by any further delay in this case, but some delay is inevitable, regardless of our decision to transfer this case to the District Court in Ft. Worth, Texas. In addition to defendant's arguments in favor of a stay of proceedings which we find somewhat persuasive, we note that the Texas Court has stayed its proceedings pending final order of the DOE. Had we not concluded that this case should be transferred, we might also have felt compelled to delay proceedings pending final agency action. Despite defendant's assertion to the contrary, we believe that the doctrine of primary jurisdiction is relevant to this lawsuit. In discussing the doctrine of primary jurisdiction the Supreme Court has found:

> Primary jurisdiction applies where a claim is originally cognizable in the Courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed with the special competence of an administrative body; in such cases the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western Pacific Railroad*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956).

This scheme necessarily contemplates a final decision of the agency on all issues before the Court. The doctrine does not defeat the Court's jurisdiction over the case, but coordinates the work of the Court and the agency by permitting the agency to rule first and giving the Court the benefit of the agency's views. *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir. 1973). Because of the complexity of these regulations and the expertise of the DOE the doctrine of primary jurisdiction is particularly applicable to this case.

We conclude, therefore, that all of Tresler's claims against Champlin should be transferred to the United States District Court for the Northern District of Texas, Ft. Worth Division. The lawsuit is premised upon the validity of the DOE regulations in dispute and all of the claims are interrelated and should be tried together in the same Court. We find that the instant action could have been brought by plaintiff against defendant in the Ft. Worth Federal District Court. For the reasons stated above we find that the plaintiff will not be unnecessarily prejudiced by this action and the interest of justice and judicial economy mandate us to transfer this case as requested. 28 U.S.C. § 1404(a).

IT IS HEREBY ORDERED, that the case of *Tresler Oil Company v. Champlin Petroleum Company*, Civil Action No. C–1–78–781 is hereby transferred to the United States District Court for the Northern District of Texas, Ft. Worth Division. All pending motions are hereby transferred to the same Court for consideration.

SO ORDERED.