**514**

Don VAN VRANKEN, on behalf of himself and the certified class he represents, Plaintiff–Appellee,

v.

UNITED STATES DEPARTMENT OF ENERGY, Defendant–Appellant.

No. 9–102.

Temporary Emergency Court of Appeals.

Argued April 17, 1989.

Decided June 22, 1989.

Judgment Entered July 5, 1989.

Don W. Crockett and Thomas W. Sacco, Judicial Litigation Div., Economic Regulatory Admin., John R. Bolton, Asst. Atty. Gen., Civ. Div., Stephen Ott, Washington, D.C., and Thomas Forgue, Office of Hearings and Appeals, U.S. Dept. of Energy, were on the brief, for defendant-appellant.

Tracy R. Kirkham and Robert B. Ericson, Hennigan & Mercer, Los Angeles, Cal., and Josef D. Cooper, San Francisco, Cal., were on the brief, for plaintiff-appellee.

Before METZNER, DAUGHERTY and MAXWELL, Judges.

METZNER, Judge.

The appellant, United States Department of Energy (DOE), appeals from an order entered in the Northern District of California, granting appellee, Don Van Vranken's motion for summary judgment in his action for declaratory relief.

The issue presented is whether DOE can refuse to accept applications for refunds in a proceeding pursuant to section 209 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904n. (1980), submitted by counsel for a plaintiff class in a section 210 lawsuit. *Id.*

In 1979 Van Vranken brought a class action against Atlantic Richfield Company (ARCO) pursuant to section 210 seeking treble damages on behalf of ARCO's wholesale customers for alleged violations of DOE's oil pricing and allocation regulations from 1976 through 1981.

In 1980 DOE instituted a number of administrative enforcement proceedings alleging similar violations against ARCO

pursuant to section 209. Its application to stay the section 210 action was granted.

In 1985 a consent order was entered disposing of DOE's action. ARCO created a $65.7 million fund that was to be distributed by DOE's Office of Hearings and Appeals (OHA) pursuant to a special refund proceeding. This refund proceeding is governed by the Petroleum Overcharge Distribution and Restitution Act of 1986 (PODRA). 15 U.S.C. §§ 4501-4507; *see* 10 C.F.R. § 205, Subpart V, §§ 205.280-88 (1987).

As a condition of the consent order, ARCO was required to provide OHA with the names and addresses of its injured customers and purchase volume data on each customer. In the fall of 1986, OHA initiated discussions with ARCO in an attempt to obtain customer lists and purchase volume information to facilitate OHA's refund proceeding. In the course of these discussions, ARCO asked OHA whether it could provide the customer lists and purchase volume data to Van Vranken as certified class representative in the Section 210 action *in lieu* of providing the information to OHA.

OHA firmly rejected this suggestion by letter dated January 20, 1987, in which it stated that it was not "in a position directly or otherwise to devote any portion of the ARCO consent order fund to a fee for the services of the class representative...." Three weeks later Van Vranken's counsel responded to this rejection by suggesting that they should be permitted to file a claim in the section 209 action on behalf of the Van Vranken class. Counsel for Van Vranken also indicated that they might attempt to seek the customer list and purchase volume information as part of a settlement of their section 210 action against ARCO.

ARCO persisted in its refusal to supply OHA with the requested information claiming that it might interfere with its litigation with the Van Vranken class. Finally, on April 10, 1987, OHA informed ARCO that the matter was referred to the Department of Justice for enforcement of the terms of the consent decree.

On June 4, 1987, a proposed settlement in Van Vranken's Section 210 action against ARCO was reached. It contained a condition that ARCO would provide class counsel with customer lists and purchase volume information to be used in making a class application in the DOE section 209 proceeding. On June 17, 1987, Judge Williams preliminarily approved the proposal and the "settlement class." On June 30, 1987, Rule 23 notice of the proposed settlement was sent to putative settlement class members.

The notice indicated that class counsel would file an aggregate claim on behalf of all class members in the section 209 refund proceeding, and that the court would calculate the amount to be received by each member. Class members need not file individual claims with DOE unless they affirmatively opt out of the settlement class. One thousand of the approximately 36,000 putative class members elected to opt out of the settlement. The notice also stated that any funds collected as a result of this aggregate claim would be subject to charges for administrative costs and attorney's fees as determined by the court.

Judge Williams was never informed, prior to approving the proposed settlement and the contents of the Rule 23 notice, of OHA's previously expressed opposition to a class refund proposal.

Upon learning of the provisions in the proposed settlement, DOE submitted an *amicus* memorandum to Judge Williams in opposition to final approval of the settlement, informing the court that it was DOE's position that it would reject any claims submitted by class counsel on behalf of settlement class members for refunds from the section 209 consent order fund. DOE argued that the proposed settlement purported to give class members something they already had—the right to an individual refund from the section 209 fund based on their purchase volumetric share—while requiring them to pay administrative and attorney's fees to class counsel to obtain it. This objection to the proposed settlement was overruled by Judge Williams at the January 21, 1988, hearing on final approval

of the settlement. Before the court entered an order approving the settlement, it was withdrawn by the parties, and ARCO did not turn over the customer lists to class counsel.

Meantime, in July 1987, ARCO finally complied with its obligations under the section 209 consent order and supplied OHA with its customer lists and purchase volume information. On January 28, 1988, OHA issued its final order implementing the special refund proceeding for the distribution of the $65.7 million fund created by DOE's section 209 action.

As part of this proceeding, DOE planned to mail an application form for refunds to approximately 26,000 ARCO customers. The form included an individualized statement of the claimant's purchases from ARCO according to ARCO's records. Most of these customers were members of plaintiff's proposed class in the section 210 action. Contrary to the Rule 23 notice distributed to class members in June 1987, DOE advised potential claimants that they must file an individual claim with OHA in order to share in the Section 209 consent order fund.

On February 2, 1988, Van Vranken instituted this action against DOE for declaratory relief individually and on behalf of the class he represents in the Section 210 ARCO action. Plaintiff sought: (1) a determination that DOE cannot reject any claims or applications in its special refund proceeding for the distribution of the Section 209 consent order fund on the grounds that they were submitted on behalf of class members by class counsel, and (2) an injunction to prevent DOE from mailing individual notice to class members regarding the refund procedures which advises them to file individual claims to share in the Section 209 consent order fund.

Van Vranken moved for summary judgment on both claims. DOE cross-moved for summary judgment.

As to the first claim, the district court granted plaintiff's motion and held that OHA's refusal to accept applications for refunds from class counsel on behalf of the specific class certified in the section 209 proceeding was contrary to section 4502(b) of PODRA, and arbitrary and capricious. This is the central issue on appeal in this case.

Summary judgment was also granted as to the second claim for an injunction. However, subsequently, the parties, at Judge Williams' urging, mooted this part of the order by entering into the following stipulation:

(1) DOE may proceed with its special refund proceeding, but will only pay those claims for refund submitted by directly injured purchasers and will not pay indirect restitution to the states until TECA has ruled on the instant appeal.

(2) Class members should submit individual applications for refunds in response to DOE's request.

(3) The deadline for submitting individual refund applications will be extended 180 days.

(4) The deadline will not apply to claims submitted by class counsel following an unsuccessful appeal to TECA by DOE.

### Discussion

A. Whether the proposed class application violates the distinction between a section 209 public enforcement action and a section 210 private enforcement action.

The decision below blurs the statutory distinction between public and private enforcement remedies embodied in the distinction between section 209 and section 210 of the Economic Stabilization Act of 1970. TECA "has consistently held that governmental enforcement actions brought under section 209 of the ESA are separate and distinct from the actions of private entities brought pursuant to section 210, and are not to be mingled in one proceeding." *Getty Oil Co. v. Department of Energy*, 865 F.2d 270, 275 (TECA 1988).

Consequently, this court has denied intervention in a section 209 enforcement proceeding to parties in a section 210 private enforcement action against a common defendant. *Id.; United States v. Exxon*, 773 F.2d 1240, 1283 (TECA 1985), *cert. denied,*

474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986); *Cities Service Co. v. Department of Energy*, 715 F.2d 572, 573–74 (TECA 1983). In denying intervention in *Cities Service*, a per curiam opinion, the court emphasized that:

"While sections 209 and 210 have a common purpose—the enforcement of DOE's regulations—they vindicate different rights. 'Actions by the United States under ESA § 209 are taken to enforce public, not private, rights.' ... By contrast, the action authorized by section 210 'is intended to be brought by private persons against other private persons.' ... We have previously warned against '[t]he commingling of private and agency enforcement devices for which Congress has made separation provision....'"

*Cities Service Co.*, 715 F.2d at 573–74 (citations omitted).

More recently, a group of utilities sought intervention in a section 209 proceeding after a utility which previously advocated a ruling which would benefit their interests was forced to withdraw from the proceedings. The utilities sought to intervene arguing that the utility which withdrew represented a class of utilities of which they were members, and therefore they had a right to continue to participate as class members. The application was denied. *Consolidated Edison Co. of New York, Inc., et al. v. Department of Energy*, 873 F.2d 301 (TECA 1989). Judge Thornberry, in a concurring opinion, emphasized that "[t]he Utilities were not able to point to any provision in the governing statute which provides for class representation in enforcement proceedings.... Similarly, the Utilities did not cite a single case where there has been class representation in an [section 209] enforcement proceeding." *Id.* at 313 (concurring opinion).

■ The district court's decision in this case to allow class counsel for a class certified in a section 210 enforcement action to make a refund application on behalf of the class for benefits derived from a section 209 proceeding is contrary to the above stated policy of keeping public and private enforcement actions separate and distinct.

Furthermore, the class members who wished to collect moneys owed them from the section 209 settlement fund without paying fees or costs to class counsel were required to opt out of the settlement and surrender their rights in the section 210 proceeding. One thousand class members followed this course.

Finally, in view of the existence of public and private remedies independent of each other, class counsel's compensation should be limited to representation associated solely with the private remedy for which he has been retained. It is unnecessary for him to be involved at all in the government proceeding for the sole purpose of enhancing his fee or providing a fund from which a fee could be paid.

B. Whether DOE's refusal to accept applications from class counsel on behalf of a Rule 23(b) class is arbitrary and capricious, and contrary to the provisions of PODRA.

■ The distribution of the section 209 consent order fund is subject to the provisions of PODRA. 15 U.S.C. §§ 4501–4507 (West Supp.1988). Section 4502(b) of PODRA, which concerns the "Disbursement of restitutionary amounts as direct restitution to injured persons," states that:

"(1) The Secretary shall, through the Office of Hearings and Appeals of the Department of Energy, conduct proceedings expeditiously in accordance with subpart V regulations for the purpose of, to the maximum extent possible—

(A) identifying persons *or classes of persons* injured by any actual or alleged violation of the petroleum pricing and allocation regulations issued pursuant to [price control Acts];

(B) establishing the amount of any injury incurred by such persons; and

(C) making restitution, through the disbursements of amounts in the escrow accounts...."

(Emphasis added). Under PODRA, excess amounts remaining in an escrow fund after

direct restitution is paid to individual claimants are distributed as indirect restitution to the states or into the United States Treasury. 15 U.S.C. §§ 4502(d), 4503.

The district court below held that the "classes of persons" language contained in PODRA section 4502(b)(1)(A) refers to identifiable classes of retailers and resellers of petroleum products, which would include the already identified Rule 23 certified class in Van Vranken's section 210 action. The district court held, therefore, that DOE was abitrary and capricious, and acting contrary to the language of PODRA, by refusing to accept a refund application from class counsel.

DOE argues that the "classes of persons" language contained in PODRA section 4502(b)(1)(A) does not refer to a Rule 23 certified class, but instead to "group" applications by established, permanent trade associations, farm cooperatives, or other membership organizations, which are permitted under DOE precedent to make an application on behalf of its members. *See Office of Special Counsel*, 10 DOE (CCH) ¶ 85,048, 88,213–14 (1982). Under a group application, ordinarily the group must submit verified purchase volume information sworn to by each individual applicant, and after review, each successful individual applicant is issued a separate individual check. *Id.* 10 DOE at 88,213–14. *See also Vickers Energy Corp.* 8 DOE (CCH) ¶ 82–597, 85,393 (1981) (group application permitted without specifying procedures).

Furthermore, unlike other group applicants, farm cooperatives are often exempted by OHA from the requirement of proving individualized injury of its members, and receive a lump sum refund payment mailed to counsel for the cooperative. *Marathon Petroleum Company/Growmark*, 15 DOE (CCH) ¶ 85,476, 88,847–48 (1987); *Tenneco Oil Company/Farmland Industries*, 10 DOE ¶ 82,597, 85,516–17 (1982). In *Tenneco Oil Co.*, 10 DOE at 85,515–16, OHA stated that:

"[C]ooperative agricultural associations were exempted … because they are generally required to operate on a non-profit basis as a condition of maintaining their favored status. Consequently, most, if not, all, cooperative associations distribute to their member-owners all of the net savings, *i.e.*, 'profits,' of the association. Since a refund would be an increase in revenues of a cooperative, the OHA … concluded that a cooperative agricultural association would pass on the refund to its purchasers. The Order therefore required only that regulated firms and cooperative associations certify that they would pass through to their customers any refund received in connection with this proceeding."

A plaintiff class in a private law suit does not come within any of the criteria established for recognizing "classes," and does not appear to be within the contemplation of the statute.

In the first place, DOE attempts to refund the maximum recovery to a claimant with a minimum of expense to that claimant. This cannot happen in a class action in which counsel for the class intervenes in the distribution line with an application for counsel fees and administrative expenses, thereby diminishing the ultimate recovery of the claimant.

Furthermore, farm cooperatives and trade associations are in a position to assist a refund proceeding by providing customer lists and purchase volume information compiled over the years. In contrast, as this case demonstrates, any customer lists or purchase volume information obtained by class counsel through discovery in the section 210 proceeding will be available to the DOE through its own discovery conducted in the course of its own section 209 proceeding.

Finally, DOE argues that distributing an "aggregate" payment to class counsel based on the total volume of purchases made by members of the class could result in some members receiving more than they are entitled to. Any excess amounts not claimed by, or distributed to, members of the Van Vranken class would be divided among those class members who made claims, rather than be distributed through

indirect restitution to the states in the second stage of the refund proceeding.

Allowing unclaimed funds to be distributed among members of the Van Vranken class is directly contrary to DOE's policy of distributing unclaimed funds through indirect restitution to the states. *See DOE Statement of Modified Restitutionary Policy in Crude Oil Cases,* 51 Fed.Reg. 27,899, 27,901 (Aug. 4, 1986). It is not arbitrary and capricious to distribute excess funds to the states rather than to counsel and members of a class in a private lawsuit.

The court concludes that DOE's refusal to accept an application on behalf of a Rule 23(b) class action in the circumstances of this case is not arbitrary and capricious, but conforms to congressional intent and is not contrary to the provisions of PODRA but is in compliance therewith.

The order granting summary judgment to the plaintiff is reversed and summary judgment is granted to the defendant.