George E. BULZAN, Plaintiff-Appellant,

v.

ATLANTIC RICHFIELD COMPANY, Defendant-Appellee.

No. 6–24.

Temporary Emergency Court of Appeals.

Argued Dec. 5, 1979.

Decided April 7, 1980.

Tracy R. Kirkham, Law Offices of Josef D. Cooper, P. C., San Francisco, Cal., with whom Josef D. Cooper, San Francisco, Cal. of the same firm; and Michael D. Coffey and William J. DiPalma, Coffey, Kosher & Gambol, Mentor, Ohio, were on brief, for plaintiff-appellant.

George F. Karch, Jr., Thompson, Hine & Flory, Cleveland, Ohio, was on brief, for defendant-appellee.

Before GRANT, BECKER and PECK, JJ.

PECK, Judge.

The issue involved in the present appeal is whether a party is entitled to bring a private action for treble damages and injunctive relief under section 210 of the Economic Stabilization Act (ESA), 12 U.S.C. § 1904 *et seq.*, when the violations that underlie the action have already been the subject of a remedial order of the Federal Energy Administration (FEA; predecessor of the Department of Energy, DOE).[1] We have addressed the relationship between private and administrative remedies under the ESA in a number of contexts. However, the precise issue now before us is one of first impression in this Court.

### I

On January 25, 1974, plaintiff Bulzan, a commission supplier of petroleum products, was notified by defendant Atlantic Richfield Company (ARCO), his supplier, that he was no longer authorized to deliver products to certain specified service stations. Shortly after he had received this notice, Bulzan asked officials of the FEA whether ARCO could order him to cease supplying accounts whose business he had developed and had historically serviced. The FEA conducted an investigation into the matter, and subsequently issued a remedial order against ARCO. Specifically, the FEA concluded that Bulzan had been a wholesale

purchaser-reseller,[2] and that ARCO's usurpation of three of Bulzan's 1972 base period customers had violated the agency's Mandatory Petroleum Allocation Regulations. *See* 10 C.F.R. § 211.9. The FEA ordered ARCO to recognize Bulzan's status as a wholesale purchaser-reseller, and to conduct its business relations with him accordingly. Further, the FEA ordered ARCO either to furnish Bulzan with petroleum products that were equal in volume to the quantities of products that ARCO had delivered directly to the three customers in question, or in the alternative, to pay Bulzan the commission that he would have earned if ARCO had supplied the products to him in a lawful manner. ARCO pursued all of its administrative remedies in an effort to have the FEA vacate its remedial order; however, the order became final when the agency denied ARCO's appeal on May 6, 1977. *See In Re Atlantic Richfield Company,* 1976–1977 CCH Energy Management Transfer Binder ¶ 85,023.

Approximately ten weeks later, on July 18, 1977, Bulzan commenced a private action against ARCO in the United States District Court for the Northern District of California. Bulzan brought his action pursuant to Section 5(a)(1) of the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 751 *et seq.* This section incorporates section 210 of the ESA, and provides treble damages and injunctive relief for any person who has suffered a legal wrong because of a violation of a regulation promulgated under the EPAA. In his action, Bulzan alleged that ARCO was guilty of various violations of the Mandatory Petroleum Allocation Regulations, and he cited as examples the violations that had been the basis of the FEA's prior remedial order against ARCO. On March 15, 1978, ARCO moved the district court (Northern District of California) to transfer Bulzan's action to

---

1. Most of the activity relevant to this litigation was conducted by the Federal Energy Administration, the predecessor of the Department of Energy.

2. ARCO argued to the FEA that Bulzan was not entitled to the protection of its regulations because Bulzan was not a wholesale purchaser-reseller. Thereafter, Bulzan requested and received a favorable interpretation from the FEA on this issue.

the District Court for the Northern District of Ohio. Such a transfer was authorized by the provisions of 28 U.S.C. § 1404(a),[3] and the district court granted ARCO's motion on June 9, 1978. Several months after the transfer, Bulzan and ARCO each filed motions for summary judgment, and on July 25, 1979, the district judge, without hearing oral argument, granted judgment in favor of ARCO. In essence, the judge concluded that Bulzan could not ". . . bring a separate and independent suit under § 210 after [he had] pursu[ed] his administrative remedies." According to the judge, "[i]f the Court permitted a separate suit under § 210 and the decision of the Court differed from the administrative determination, the practical effect of the Court's decision would be to set aside, in whole or in part, the agency order [in violation of § 211(d)(1) of the ESA]." (Section 211(d)(1) limits the scope of judicial review of agency determinations. It states, in pertinent part, that ". . . no order of [any agency exercising authority under the Act] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.") In accordance with its conclusion, the district court denied Bulzan the right to bring a private action for damages and injunctive relief under § 210, and ruled ". . . Bulzan [could] only proceed under § 211."

We conclude that the district court failed to recognize the basic dichotomy between private actions under section 210 and administrative actions under section 211. Accordingly, we reverse.

## II

■■■ The independence of the administrative and private remedies provided by the ESA is strongly supported by the simple fact that the remedies themselves are different in degree; that is, an aggrieved party is able to secure a treble damage award

3. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer

only through a private action pursuant to section 210 of the Act. In *Evanson, et al. v. Union Oil Company of California, et al.,* 5 CCH Energy Management ¶ 26,056 (D.Minn.1976), the district court correctly reasoned that any administrative remedy that was available to a complainant under the ESA was "plainly inadequate" as a substitute for the complainant's private rights under section 210. The court said:

> Even if the agency responds to a complaint by proceeding with utmost vigor against the party named in the complaint, the agency has no jurisdiction to enforce the complainant's substantive rights under § 210: the FEA has no power to award treble damages. It is doubtful that FEA regulations were intended to provide plaintiffs with an administrative remedy, and any remedy which is provided is "plainly inadequate."

5 CCH Energy Management at ¶ 26,448 (citations omitted). Congress, by fashioning different administrative and private remedies into the ESA and EPAA, indicated that neither remedy was to be the exclusive recourse for a party who has suffered a legal wrong because of a violation of a FEA and DOE regulation. Moreover, the statutory scheme adopted by Congress would in fact be undermined if a party were prohibited from pursuing a treble damage award simply because, after he had filed a complaint with the FEA or DOE, the agency proceeded to issue a remedial order. If such were the case, and the issuance of an agency order automatically foreclosed a complainant's right to institute a potentially more lucrative action for treble damages, all aggrieved parties would be inclined to file their private actions without notifying the DOE of their complaints. Such conduct would place a substantial burden on the federal courts, and would significantly detract from the effectiveness of the administrative process that Congress incorporated into its regulatory plan.

any civil action to any other district or division where it might have been brought."

■ The legislative history that surrounds the ESA further documents the independence of the administrative and private remedies that are provided by the Act. Even a cursory analysis of this history makes clear that Congress designed the two remedies, along with the various procedures that give rise to them, in order to serve fundamentally different (albeit complementary) purposes. When the Act is reduced to its basic terms, it is apparent that the provisions for a private remedy under section 210 focus on the relationship between a violator of a FEA or DOE regulation and an aggrieved party, while the provisions for an administrative remedy under the Act focus on the relationship between a violator and the federal government. For example, private remedies under section 210, and in particular the remedy of treble damages, not only encourage aggrieved parties to come forward with their complaints (thereby supplementing the enforcement machinery of the government); they also provide a strong deterrent to any would-be violator of a FEA or DOE regulation. In *Ashland Oil Co. of California v. Union Oil Co. of California*, 567 F.2d 984, 990 n.11 (Em.App.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978), this Court stated that "[t]he lack of extensive government machinery to police the price regulations coupled with their emergency nature and complexity [make] the role of private actions critical." This observation is consistent with both the House and Senate Reports that discuss the private remedies provided by section 210. The House Report states, in pertinent part:

The Committee, in line with the Administration's emphatic request for voluntary surveillance to assure compliance with price and rent regulations and orders, adopted this section so that it would serve not only to provide a means to recover losses, but would provide a strong deterrent to those who would willfully violate this Act.

H.R.Rep. No. 92–714, 92nd Cong., 1st Sess. (1971). Likewise the Senate Report states:

Section 210 provides a traditional method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering a legal wrong to bring a treble damage action against a violator.

Senate Rep. No. 92–507, 92nd Cong., 1st Sess. (1971). In contrast, the administrative remedies authorized by the ESA are not designed to provide a redress for a victim who has suffered an injury because of a violation of a FEA or DOE regulation; in other words, in contrast to private remedies, administrative remedies are not concerned either with *punishing* a violator for his illegal conduct or with *compensating* a victim for his injuries. Rather, the purpose of administrative remedies ". . . is to insure, on a national scale, the *enforcement* of [the DOE's administrative] regulations." Economic Regulatory Enforcement Manual, § 1.501.00 (emphasis added). A complainant is technically not a party either to an administrative investigation or to a subsequent enforcement action, and any compensation that a complainant may receive through the issuance of a remedial order is simply a by-product of the agency's effort to re-establish compliance with its regulatory scheme.[4]

■ In recognition of the dual purposes served by administrative and private remedies under the ESA, it is now settled that an aggrieved party need not either commence or exhaust available administrative proceedings prior to the filing of a private action. *See, e. g., Air Products & Chemicals, Inc. v. United Gas Pipeline Co.*, 503 F.2d 1060 (Em.App.1974); *Evanson, et al. v. Union Oil Co. of California, et al.*, supra; *Orange & Rockland Utilities, Inc. v. Howard Oil Co.*, 416 F.Supp. 460, 465 (S.D.N.Y.1976); *Brennan Petroleum P. Co., Inc. v. Pasco Petroleum Co., Inc.*, 373 F.Supp. 1312, 1315 (D.Ariz.1974). Likewise this Court has recently held that the DOE can-

---

4. This Court, in *Dyke v. Gulf Oil Corp.*, 601 F.2d 557, 567 (Em.App.1979), noted that the separation of public and private remedies un-der the Economic Stabilization Act corresponds to the different remedies provided by both the antitrust laws and the securities laws.

not be required to be a party to a private suit under section 210, unless there are compelling circumstances which necessitate the agency's involvement. *See Dyke v. Gulf Oil Corp.*, 601 F.2d 557 (Em.App.1979). Consistent with these decisions, we now hold that the entry of a remedial order by the FEA or DOE does not foreclose the complainant's right to institute a private action for damages and injunctive relief under section 210.

## III

The district court herein expressed concern that a judicial determination in plaintiff's action ". . . might differ from the [prior] administrative determination [of the FEA]." With this possibility in mind, the court reasoned that a decision in plaintiff's action might be tantamount to a tacit and improper review of the FEA order. *See* section 211(d)(1) of the ESA, *supra.* While we share to some degree the concern of the district court, we conclude that the court improperly dealt with the problem of potential conflict when it denied plaintiff the right to bring a private action under section 210.

■ The denial of the right of an aggrieved party to bring a private action under the ESA not only acts in derogation of the statutory scheme of the Act (*see* part II, *supra* ), but constitutes an overly broad response to a problem that can be handled through less drastic measures. For example, courts, under the doctrine of primary jurisdiction,[5] have stayed actions in deference to administrative determinations where the issues and questions involved in the actions have fallen within the particular expertise of the administrative agencies. Specifically, courts have invoked the doctrine of primary jurisdiction to defer to the expertise of the FEA or DOE, despite the fact that the aggrieved parties in the various actions have not been required to exhaust their administrative remedies. *See e. g., Terrell Oil Corp. v. Atlantic Richfield Co.*, 468 F.Supp. 860 (E.D.Tenn.1978); *Orange & Rockland Utilities, Inc. v. Howard Oil Co., supra.* Further, this Court in *Dyke v. Gulf Oil Corp., supra*, 601 F.2d 557 (Em. App.1979), recently enumerated a number of procedures which can be used either to reduce or to eliminate the conflict between the decision-making of the courts and the DOE. These procedures include an amicus curiae appearance by the DOE, permissive intervention by the agency pursuant to Rule 24(b), Fed.R.Civ.P.,[6] nonparty discovery, and the adjustment of a court's liability award so as to take into account a

---

**5.** The doctrine of primary jurisdiction has been referred to as:

"a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

*Far East Conference v. United States*, 342 U.S. 570, 574–575, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).

**6.** Rule 24(b), Fed.R.Civ.P. reads:

"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. *When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.* In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. [Emphasis added.]"

prior or subsequent DOE remedial order. Finally, courts are required to give "great deference" to all appropriate administrative interpretations of congressional statutes and their implementing regulations. *See, e. g., Pasco, Inc. v. FEA*, 525 F.2d 1391, 1400–1401 (Em.App.1975). Procedures of this type are adequate to minimize the potential conflict between administrative actions of the FEA or DOE, on the one hand, and private actions under section 210 of the ESA, on the other. At the same time, these procedures keep intact the dual enforcement scheme that Congress incorporated into its regulatory plan.

Contrary to the conclusion of the district court, we hold that the entry of the remedial order by the FEA did not bar plaintiff's right to institute a private action for damages and injunctive relief pursuant to section 210 of ESA. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.