The RIO GRANDE, EL PASO AND SANTA FE RAILROAD COMPANY and Burlington Northern and Santa Fe Railway Company, Plaintiffs–Appellants,

v.

DEPARTMENT OF ENERGY, Defendant–Appellee.

No. 99–1528.

United States Court of Appeals, Federal Circuit.

Dec. 4, 2000.

William H. Bode, Bode & Beckman, of Washington, DC, argued or plaintiffs-appellants.

Don W. Crockett, Attorney, Office of General Counsel, United States Department of Energy, of Washington, DC, argued for defendant-appellee.

SCHALL, Circuit Judge.

The Rio Grande, El Paso and Santa Fe Railroad Company and the Burlington and Santa Fe Railway Company (collectively, "Santa Fe")[1] appeal the decision of the United States District Court for the District of Columbia upholding the denial by the Office of Hearings and Appeals ("OHA") of the Department of Energy ("DOE") of Santa Fe's July 30, 1990 application for an above-volumetric refund from the Shell Oil Co. ("Shell") restitution fund pursuant to the Petroleum Overcharge Distribution and Restitution Act of 1986 ("PODRA"). *The Rio Grande, El Paso & Santa Fe R.R. Co. v. Dep't of Energy,* No. 97–2574(HHK) (D.D.C. May 13, 1999) (*"Santa Fe V"*). The district court sustained OHA's February 3, 1993 final decision on the ground that Santa Fe is no longer "injured" within the meaning of PODRA because of Santa Fe's 1980 settlement of its overcharge action against Shell. *Id.* at 6–9. We agree that, in light of the 1980 settlement, Santa Fe cannot pursue its above-volumetric refund claim. We therefore affirm.

## BACKGROUND

### I.

Under the Economic Stabilization Act of 1970 ("ESA"), 12 U.S.C. § 1904 note (1976), and the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. § 751 *et seq.* (1982), DOE was given the responsibility of promulgating and enforcing the Mandatory Petroleum Price and Allocation Regulations ("MPPAR"). *See Siegel Oil Co. v. Richardson,* 208 F.3d 1366, 1367–68 (Fed.Cir.2000) (providing an overview of the statutory and regulatory framework). The regulations established ceiling prices for crude oil and other petroleum products, 10 C.F.R. pt. 212 (1981), as well as a mandatory system for allocation of these products between historical suppliers and purchasers, 10 C.F.R. pt. 211 (1981). The MPPAR required, in part, that refiners be subject to a mandatory petroleum pricing rule, which, in general, meant that refiners could not charge a price for a "covered product" in excess of the "base price" for that product, as established during a certain initial period. 10 C.F.R. § 212.83(a)(1) (1981). These regu-

---

1. Before the district court, the real party in interest was Atchinson, Topeka & Santa Fe Railway Company, but on December 31, 1996, that company merged into the Burlington Northern Railroad Company, which was then renamed the Burlington Northern and Santa Fe Railway Company. The Rio Grande, El Paso and Santa Fe Railroad Company is a wholly owned subsidiary of the Burlington Northern and Santa Fe Railway Company, and all asserted claims involved in this appeal have been assigned to it.

lations were in effect from August 19, 1973 through January 27, 1981. 10 C.F.R. pts. 211–212 (1982). The ESA provided both public and private enforcement mechanisms in order to implement the price control program. Under § 209 of the ESA, the President could use either federal district courts or administrative agencies, with subsequent judicial review, to implement the program. Under § 210 of the ESA, private litigants were authorized to sue in federal district courts for violations of the ESA, EPAA, or the MPPAR.[2]

In 1979, DOE promulgated the "Subpart V" regulations that established procedures for the distribution of funds collected from companies by DOE pursuant to the ESA or EPAA. 10 C.F.R. pt. 205, subpt. V (1999). In 1986, Congress enacted PO-DRA, 15 U.S.C. §§ 4501–4507 (1998), to facilitate the distribution of these funds "in accordance with subpart V regulations." 15 U.S.C. § 4502(b)(1)(A)-(C). Under these procedures, OHA was tasked with identifying and providing restitution to those claimants who were injured by any actual or alleged violations of the ESA, EPAA, and the MPPAR. 15 U.S.C. § 4501(a)(1); 10 C.F.R. § 205.280.

## II.

On January 10, 1978, Santa Fe filed a private overcharge action under § 210 of the ESA against Shell in the United States District Court for the Northern District of Illinois. Santa Fe alleged that Shell had overcharged it in sales of diesel fuel from Shell's Wilmington, California and Ciniza, New Mexico refineries. On March 24, 1980, the district court granted Shell's motion for partial summary judgment, finding that Santa Fe's claims were time-barred under the applicable statute of limitations. Thereafter, on June 6, 1980, Santa Fe settled its suit with Shell. Subsequently, as a result of the settlement, the district

court dismissed Santa Fe's action with prejudice under Fed.R.Civ.P. 41(a). *Atchison, Topeka & Santa Fe R.R. Co. v. Shell Oil Co.*, No. 78–C–85 (N.D. Ill. June 20, 1980) (Stipulation and Order) ("*Santa Fe I* ").

The settlement of June 6, 1980 (the "1980 settlement"), labeled "RELEASE," stated that:

> Santa Fe and Shell desire to settle [case No. 78–C–85 in the United States District Court for the Northern District of Illinois] and end the lawsuit.
>
> . . .
>
> In consideration of the sum of Ten Dollars ($10.00) . . . and for other good and valuable consideration . . . Santa Fe hereby fully releases and forever discharges Shell, including each of its subsidiaries, and affiliates, and each of its and their directors, officers, agents, employees, and representatives, past and present, from all claims, demands, suits and causes of action in law, equity, or otherwise, accrued or unaccrued, or howsoever arising, known or unknown, arising from the sale and supply by Shell of petroleum products to Santa Fe occurring prior to the date of the filing of the above-captioned lawsuit.
>
> Santa Fe further acknowledges that the payment of any sum or other consideration by Shell is made without any admission of liability, that Shell denies any liability for any claims, demands, or causes of action by Santa Fe against Shell hereinbefore described.

Pursuant to the 1980 settlement, Shell paid Santa Fe $550,000.

## III.

Almost seven years later, on March 26, 1987, DOE and Shell entered into a Consent Order settling claims by DOE regarding Shell's crude oil and refined petroleum

---

**2.** Sections 209 and 210, providing avenues for relief for violations of the ESA, EPAA, or the MPPAR, were added to the ESA through the Economic Stabilization Act Amendments of

1971, Pub.L. No. 92–210, 85 Stat. 743 (1971). *See also Consol. Edison Co. of N.Y. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997).

product operations during the Consent Order period of January 1, 1973, through January 27, 1981. *Shell Oil Co.,* 18 DOE (CCH) ¶ 85,492, 88,796 (1989). Shell did not acknowledge any specific violation of the MPPAR, but agreed to pay approximately $20 million plus accrued interest to DOE for distribution to parties injured by Shell's alleged violations, thus creating the "Shell restitution fund." *Id.* at 88,796–88,797. OHA, on January 13, 1989, instituted a special refund proceeding in accordance with Subpart V to facilitate distribution of the Shell restitution fund to former Shell purchasers. *Id.* at 88,797–88,802.

OHA first established a presumption that the Shell restitution fund should be dispersed equally among all of Shell's sales of refined petroleum products during the Consent Order period—the "volumetric presumption." *Id.* at 88,797. Under the volumetric presumption, a claimant, upon proving the number of gallons purchased from Shell during the Consent Order period, was "not required to submit any further evidence of injury." *Id.* at 88,798–88,799. The claimant could then obtain a refund amount determined by multiplying the number of gallons bought from Shell during the Consent Order period by the volumetric factor of $0.000226 per gallon.[3] *Id.* at 88,797–88,799. However, a claimant could attempt to demonstrate that its injuries were in excess of the amount it could obtain under the volumetric presumption by requesting an "above-volumetric" refund. *See id.* at 88,800–88,802. Under an above-volumetric refund claim, a claimant bore the burden of demonstrating that it was injured by overcharges from Shell, and that its injuries resulted in a specific amount of monetary harm. *International Drilling & Energy Corp. v. Watkins,* 920 F.2d 14, 18 (Temp.Emer.Ct.App.1990).[4]

In order to receive an above-volumetric refund, a claimant had to prove that it had paid a refiner an amount that exceeded the Maximum Allowable Price under the MPPAR. *Id.*

## IV.

On July 30, 1990, Santa Fe submitted to OHA an above-volumetric refund claim under PODRA and Subpart V, seeking $2,963,935 plus interest from the Shell restitution fund. Santa Fe based its request for an above-volumetric refund upon the contention that it was overcharged by Shell in its purchases of diesel fuel from Shell's refineries in Wilmington and Ciniza, the same claim Santa Fe had made in its private action against Shell under § 210 of the ESA in 1978. OHA denied the request, giving Santa Fe a refund based only on the volumetric presumption. *Shell Oil Co./The Atchison, Topeka, & Santa Fe R.R. Co.,* 22 DOE (CCH) ¶ 85,245, 88,655–88,656 (1993) ("*Santa Fe II* "). OHA determined that, during the Consent Order period, Shell had discontinued the production of a lower grade of diesel fuel at its Wilmington and Ciniza refineries and then produced and sold a higher grade fuel. *Id.* at 88,653–88,655. OHA concluded that this increase in quality of diesel fuel justified Shell's increase in the diesel fuel's price per gallon. *Id.* at 88,655. Such an increase in price, OHA reasoned, was not in violation of the MPPAR. *Id.*

Santa Fe moved for reconsideration on the principal ground that, regardless of a change in fuel grade or quality, any price increase was a violation of the MPPAR. *Shell Oil Co./The Atchison, Topeka, & Santa Fe R.R. Co.,* 24 DOE (CCH) ¶ 85,-102 (1994) ("*Santa Fe III* "). OHA again

---

3. This volumetric factor was derived by dividing the approximately $20 million received from Shell by the number of gallons of refined petroleum products sold by Shell during the Consent Order period. *Shell,* 18 DOE at 88,-797.

4. In cases over which we have appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(11)-(14) (1994), we have adopted the body of law represented by the holdings of the Temporary Emergency Court of Appeals as controlling precedent. *Tex. Am. Oil Corp. v. Dept. of Energy,* 44 F.3d 1557, 1561 (Fed.Cir.1995) (en banc).

denied Santa Fe's claim. In so doing, it set forth as an additional ground for denial the 1980 settlement with Shell. OHA held that the settlement barred Santa Fe from seeking an above-volumetric refund claim under PODRA, and thus provided an "independent basis" for rejecting Santa Fe's claim. *Id.* at 88,329.[5] OHA found that Santa Fe already had litigated the same claim it was pursuing under PODRA in its suit against Shell in the Northern District of Illinois, and that the private suit had been settled and dismissed with prejudice. *Id.* at 88,330–88,331. OHA determined that Santa Fe, through the 1980 settlement, had already received restitution for Shell's actions and was no longer injured, as required by PODRA for the payment of a refund. *Id.* at 88,330. OHA also determined that the doctrine of collateral estoppel barred Santa Fe from pursuing its PODRA claim, and that permitting Santa Fe to pursue an above-volumetric claim would upset the finality of judgments by allowing "Santa Fe to challenge the fairness of a settlement agreement." *Id.* at 88,330–88,331. OHA also reiterated that the evidence showed that the grade and quality of the diesel fuel provided to Santa Fe increased over the refund period and that such a change in quality justified Shell's price change. *Id.* at 88,331–88,335.

Santa Fe again moved for reconsideration, which OHA denied. *Shell Oil Co/The Atchison, Topeka, & Santa Fe R.R.,* 26 DOE (CCH) ¶ 85,021, 88,051–88,052 (1996) ("*Santa Fe IV* "). OHA reiterated its earlier rulings, further noting that, because the restitution action under PODRA and the doctrine of *res judicata* are equitable in nature, Santa Fe could have proved, but did not, that "an additional refund was necessary to prevent a manifest injustice that was inconsistent with the equitable purpose of the PODRA statute." *Id.* at 88,051–88,052.

Santa Fe appealed to the United States District Court for the District of Columbia, which upheld DOE's decision based upon the determination that the 1980 settlement barred Santa Fe from pursuing a PODRA refund claim. *Santa Fe V,* slip op. at 4–9. The court, relying in part on *Hydrocarbon Trading & Transport Co. v. Department of Energy,* 4 Energy Mgmt. (CCH) ¶ 26,692 (D.D.C.1995), concluded that, with the unqualified release language in the 1980 settlement, "all of Santa Fe's actual or potential rights based on injuries from Shell's alleged MPPAR violations were extinguished in 1980, and ... Santa Fe is no longer 'injured' within the meaning of PODRA." *Santa Fe V,* slip op. at 6–7. The court stated that OHA's allowance of a volumetric-based refund was not inconsistent with OHA's conclusion that the 1980 settlement extinguished Santa Fe's injuries because a volumetric refund is triggered from a presumption, not an actual finding of injury. *Id.* at 7.

Santa Fe appeals the district court's final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(11), (12) (1994).

## DISCUSSION

### I.

Santa Fe argues that the 1980 settlement does not bar its claim for an above-volumetric refund under PODRA. Citing *Apex Oil Co., Clark Oil & Ref. Corp./Go–Tane Service Stations, Inc.,* 27 DOE (CCH) ¶ 85,006 (1998) ("*Go–Tane* "), it asserts that it still is injured because the settlement failed to fully compensate it for Shell's overcharges. Santa Fe argues that the fair and equitable implementation of the statutory scheme set forth in PODRA requires OHA to allow a claimant to reassert an above-volumetric refund in an administrative proceeding if the prior § 210 judgment did not fully compensate the claimant. Santa Fe further argues that its

---

5. OHA noted that it did not address this issue in its initial decision because of its ultimate conclusion that Santa Fe was not otherwise entitled to an above-volumetric refund. *Id.* at 88,329–88,330.

prior recovery should merely offset its recovery in the refund proceedings. In making this argument, it relies on *Bulzan v. Atlantic Richfield Co.*, 620 F.2d 278 (Temp.Emer.Ct.App.1980).

DOE responds that the 1980 settlement extinguished all of Santa Fe's overcharge claims arising out of any purchases of petroleum products from Shell, including Santa Fe's current above-volumetric refund claim under PODRA. DOE asserts that Santa Fe was made whole by the unqualified settlement of its § 210 overcharge claims against Shell and is thus barred from recovering again under PODRA, *i.e.*, Santa Fe is no longer "injured." DOE argues that Santa Fe's reliance on *Go–Tane* and *Bulzan* is misplaced and that the district court correctly looked to the authority of *Hydrocarbon* to decide the case.

## II.

■ "Because we review the agency action on the identical basis as did the district court, no particular deference is accorded to the conclusions of the district court." *Amoco Corp. v. Dept. of Energy*, 912 F.2d 472, 475 (Temp.Emer.Ct.App.1990). We do, however, give "great deference to the underlying agency action," *Siegel Oil*, 208 F.3d at 1371. "We recognize DOE's administrative expertise, accord the agency's determinations great deference, and must approve the DOE decision if there is a rational basis for it." *Phoenix Petroleum Co. v. Fed. Energy Regulatory Comm'n*, 95 F.3d 1555, 1567 (Fed.Cir.1996). We also give substantial deference to OHA's interpretation of the statutes it is charged with administering, *Powerine Oil Co. v. Fed. Energy Admin.*, 536 F.2d 378, 385 (Temp.Emer.Ct.App.1976), and its interpretation of the implementing regulations DOE has promulgated, *Goodyear Tire &*

*Rubber Co. v. Dep't of Energy*, 118 F.3d 1531, 1539 (Fed.Cir.1997).

■ PODRA and the Subpart V regulations provide a framework for persons injured by actual or alleged violations of the EPAA, ESA, or the MPPAR to obtain refunds from a restitution fund. Importantly, the statutory and regulatory scheme emphasizes that only those who are injured by actual or alleged violations of pricing and allocation regulations are eligible for payments from the restitution fund. PODRA "specifies the procedure for the disbursement of funds collected ... by the [DOE] or the courts ... as restitution for actual or alleged violations of [the EPAA or ESA] or regulations." 15 U.S.C. § 4501(a)(1); *see also Goodyear Tire*, 118 F.3d at 1537–38. PODRA directs OHA to proceed through a two-step process, "in accordance with subpart V regulations," when evaluating refund requests. 15 U.S.C. § 4502(b)(1). First, OHA must "identify[ ] persons or classes of persons injured by any actual or alleged violation of the petroleum pricing and allocation regulations." 15 U.S.C. § 4502(b)(1)(A). Next, OHA must "establish[ ] the amount of any injury incurred by such persons." 15 U.S.C. § 4502(b)(1)(B). Subpart V further explains the purpose behind the procedure—that "refunds may be made to injured persons in order to remedy the effects of a violation of the regulations of the Department of Energy." 10 C.F.R. § 205.280.

■ We conclude that, as a result of the 1980 settlement with Shell, Santa Fe is no longer a "person[ ] *injured* by any actual or alleged violation of the petroleum pricing and allocation regulations," 15 U.S.C. § 4502(b)(1)(A) (emphasis added). It thus cannot pursue its above-volumetric refund claim.[6] In its private § 210 action against Shell, Santa Fe alleged the same violations as it does in its present refund claim—that

---

6. As the district court correctly noted, Santa Fe may still pursue a volumetric refund claim because such a claim does not require an actual finding by OHA that the claimant is "injured." Accordingly, the 1980 settlement would not bar such a claim. As noted in *Shell*, injury is not an issue in a volumetric claim. *Shell*, 18 DOE at 88,797.

Shell overcharged Santa Fe for diesel fuel sold from Shell's Wilmington and Ciniza refineries, in violation of the MPPAR. In exchange for $550,000, Santa Fe settled its claims with Shell, "fully releas[ing] and forever discharg[ing] Shell . . . from all claims, demands, suits . . . arising from the sale and supply by Shell of petroleum products to Santa Fe. . . ." Pursuant to the 1980 settlement, the district court entered an order dismissing Santa Fe's § 210 claims with prejudice, under Fed.R.Civ.P. 41(a)(1) and (2). The 1980 settlement, in combination with the district court's dismissal of Santa Fe's overcharge claims, completely extinguished Santa Fe's claim that it was injured by violations of the MPPAR by Shell. *See Hartley v. Mentor Corp.*, 869 F.2d 1469, 1473 (Fed.Cir.1989) (indicating that a dismissal of a claim with prejudice pursuant to a negotiated settlement is an adverse adjudication on the merits of the claim); *see also W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 977 F.2d 558, 560 (Fed.Cir.1992) (stating that a consent order embodying a settlement agreement is a final judgment "accompanied by finality as stark as an adjudication after full trial"); Restatement (Second) of Judgments § 24 (1982). Santa Fe was compensated for Shell's alleged regulatory violations. It thus cannot still be considered "injured" by those alleged violations under 15 U.S.C. § 4502(b)(1)(A). *See Hydrocarbon*, 4 Energy Mgmt. at 27,419 (holding that "[i]f a party has been compensated for past injuries 'in full settlement and compromise' of all outstanding claims, that party cannot be considered 'injured' under 15 U.S.C. § 4502(b)(1)(A)," and thus cannot pursue a PODRA refund claim).

Contrary to Santa Fe's arguments, we do not need to inquire into whether the 1980 settlement adequately compensated Santa Fe in order to conclude that Santa Fe is not still "injured" within the meaning of PODRA. Regardless of the amount Santa Fe received in the 1980 settlement, the settlement, on its face, purports to provide Santa Fe with sufficient compensation to "forever discharge[ ] . . . all claims"

that it was harmed by Shell for violations of the MPPAR. Santa Fe cannot, now, collaterally attack the 1980 settlement's ability to provide full compensation for Santa Fe's alleged injuries without showing that the settlement was not a valid, binding contract. *See Asberry v. United States Postal Serv.*, 692 F.2d 1378, 1380 (Fed.Cir.1982) ("Those who employ the judicial appellate process to attack a settlement through which controversy has been sent to rest bear a properly heavy burden."). The district court in *Hydrocarbon* came to a similar conclusion, holding that, based solely on a prior settlement between Hydrocarbon and Exxon, Hydrocarbon was not "injured" within the meaning of PODRA. *See Hydrocarbon*, 4 Energy Mgmt. at 27,419. In reaching that conclusion, the court never explored whether the prior settlement properly compensated Hydrocarbon for its claims. *See id.*

OHA employed a similar analysis in *Go–Tane*, where one of the refund claims Go–Tane pursued was based on violations of the allocation regulations in the MPPAR. *Go–Tane*, 27 DOE at 88,030–88,031. OHA noted that Go–Tane already had received a jury verdict on its allocation claim in a previous private § 210 action, and thus could not pursue a refund under PODRA based on the same claim because Go–Tane had already obtained a final adjudication of its allocation claim on the merits, extinguishing its right to any other remedy. *Id.* at 88,040–88,045. In not allowing Go–Tane to pursue its allocation-based PODRA claim, OHA specifically refused to consider whether the final judgment based on the jury verdict "was incorrect and [whether Go–Tane] was actually injured [to] a greater extent" because it was precluded from questioning the previous judgment's holding that Go–Tane had been fully compensated. *Id.* at 88,041.

■ Santa Fe relies on the fact that OHA's decision in *Go–Tane* allowed Go–Tane to pursue its claim for an overcharge-based refund. We do not believe

this aspect of *Go–Tane* is helpful to Santa Fe. Go–Tane, in addition to its private § 210 allocation claim mentioned above, brought a § 210 overcharge claim that was dismissed with prejudice because it was barred by the applicable statute of limitations. *Id.* at 88,031. OHA allowed Go–Tane to pursue its overcharge claim under PODRA because "[i]t would be plainly inconsistent with the equitable implementation of the statutory scheme of PODRA to treat a similarly situated applicant differently in this proceeding based solely on the fact that it attempted, unsuccessfully, to exercise its right of private action after the statute of limitations had run." *Id.* Contrary to Santa Fe's argument, a similar analysis does not apply in this case. Although Santa Fe's § 210 claim was found to be barred by the applicable statute of limitations, Santa Fe settled its § 210 claim before it was dismissed. Santa Fe, by settlement, thus extinguished its right to claim that it remained injured after its case was dismissed, while Go–Tane did not. Go–Tane never received a final adjudication on the merits of its claim. *See Doko Farms v. United States,* 956 F.2d 1136, 1140 (Fed.Cir.1992) (noting that a holding that a claim is barred by a statute of limitations "determine[s] nothing with respect to the merits of the . . . claim"). Go–Tane was barred by the statute of limitations from pursuing in district court its overcharge-based refund claim. A dismissal due to the operation of a statute of limitations does not extinguish one's right to a remedy, especially a remedy provided for by an administrative proceeding. *See id.* (stating that dismissals based on expiration of the applicable statute of limitations do not necessarily foreclose administrative remedies); 18 Wright, Miller & Cooper, *Fed. Practice & Procedure* § 4441 (1981) (noting that "limitations rulings preclude only specific limitations issues and do not preclude the underlying claim"). Thus, a settlement can be considered an adjudication on the merits, while a dismissal due to a violation of the applicable stat-

ute of limitations, under certain circumstances, may not.

Furthermore, the equitable nature of the PODRA statutes does not mandate that OHA determine whether the 1980 settlement fully compensated Santa Fe before finding that Santa Fe's refund claim is barred. PODRA's main purpose was to establish a procedure to distribute funds to those who were injured from actual or alleged violations of the ESA, EPAA, and MPPAR. As noted above, the 1980 settlement, on its face, purported to fully compensate Santa Fe for its injuries. In addition, although the Subpart V regulations require OHA to "take into account the desirability of distributing the refunds in an efficient, effective and equitable manner," the regulations also instruct OHA to apply such an equitable approach to "all *outstanding* claims." 10 C.F.R. § 205.282(e) (emphasis added). Since the 1980 settlement acts as a final adjudication of Santa Fe's claims of injury for Shell's alleged violations of the MPPAR, Santa Fe has no "outstanding claims." Therefore, equitable application of PODRA is not available to Santa Fe. PODRA, although equitable in nature, does not provide an avenue for relief to those who have already received a final adjudication, for whatever amount of compensation, of the merits of their claims.

We also reject Santa Fe's reliance on the decision of the Temporary Emergency Court of Appeals in *Bulzan.* In *Bulzan,* the court held that the entry of an administrative remedial order by DOE against a supplier of petroleum products did not foreclose a subsequent private cause of action by a buyer against that supplier under § 210 of the ESA. *Bulzan,* 620 F.2d at 282–84. The court based its holding on the independence of the two actions. *Id.* at 282. The court observed that an administrative remedial order involved the relationship between the supplier and the federal government, while a private action under § 210 involved the relationship between the supplier and an aggrieved pri-

vate party. *Id.* A different situation is present in this case. Here, the interplay between Santa Fe's private § 210 action against Shell and its request for an administrative refund is at issue. DOE's earlier administrative action against Shell, establishing the restitution fund, is not being considered. Unlike the situation in *Bulzan,* in this case the claimant in the private and the administrative proceedings are the same—Santa Fe.

## CONCLUSION

In order for Santa Fe to be able pursue its above-volumetric refund claim, PODRA requires that it be injured by actual or alleged violations of the EPAA, ESA, or the MPPAR. Due to the 1980 settlement between Santa Fe and Shell, Santa Fe can no longer be considered injured under PODRA. Accordingly, OHA and the district court correctly denied Santa Fe's above-volumetric refund claim. Because we affirm OHA's holding that Santa Fe's above-volumetric refund claim is barred by its 1980 settlement, we do not entertain DOE's request to review OHA's findings regarding the merits of the claim. The decision of the district court is

## AFFIRMED.