291 F.3d 822
 SINCLAIR OIL CORPORATION and Little America Refining Company, Plaintiffs-Appellees,
v.
Spencer ABRAHAM, secretary of Energy, George B. Breznay, Director, Office of Hearings and Appeals, and Department of Energy, Defendants-Appellants.
 No. 01-1186.
 United States Court of Appeals, Federal Circuit.
 May 24, 2002.
 Rehearing and Rehearing En Banc Denied July 31, 2002.
 
 Melvin Goldstein, Goldstein & Associates, P.C., of Washington, DC, argued for plaintiffs-appellees. With him on the brief was William L. Miller.
 Don W. Crockett, Office of General Counsel, Department of Energy, of Washington, DC, argued for defendants-appellants.
 Before NEWMAN, RADER, and SCHALL Circuit Judges.
 Opinion for the court filed by Circuit Judge RADER. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.
 RADER, Circuit Judge.
 
 
 1
 Sinclair Oil Corporation and its predecessor-in-interest Little America Refining Company (collectively Sinclair) filed a refund application with the Office of Hearings and Appeals of the Department of Energy (DOE) under the Atlantic Richfield Company (ARCO) refund distribution proceedings. In a final decision, DOE rejected Sinclair's refund application. Sinclair appealed that rejection to the United States District Court for the District of Wyoming, which set aside DOE's final decision and remanded for a final determination of relief. Because DOE correctly rejected Sinclair's refund application, this court reverses the district court and reinstates DOE's final decision.
 
 I.
 
 2
 The ARCO refund distribution proceedings arose under the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 75 (1982), which incorporated section 211 of the Economic Stabilization Act of 1970(ESA), 12 U.S.C. § 1904 note (1976). Congress enacted the EPAA to address the Arab oil embargo of the 1970s. Under those statutes, DOE promulgated Mandatory Petroleum Price and Allocation Regulations (MPPAR) in effect from August 1973 through January 27, 1981. 6 C.F.R. § 150 (1981); 10 C.F.R. §§ 210-12 (1981). Among other things, the MPPAR set ceiling prices for crude oil and other petroleum products. Id.
 
 
 3
 The ESA of 1970 provided a two-tier system for both public and private enforcement of the price control program. Section 209 permitted the President to enforce the program either in federal district court or in the administrative agency process. Section 210 authorized private parties to sue in federal district courts for treble damages. In 1979, DOE promulgated the "Subpart V" regulations for the distribution of funds collected from companies by DOE under both ESA and EPAA. 10 C.F.R. § 205.80-88 (1988). In 1986, Congress enacted the Petroleum Overcharge and Restitution Act (PODRA), 15 U.S.C. §§ 4501-4507 (1988), to distribute funds "in accordance with subpart V regulations." 15 U.S.C. § 4502(b)(1)(A)-(C). Those regulations tasked DOE with identifying and providing restitution to claimants injured by any actual or alleged violations of the ESA, EPAA, and the MPPAR. 15 U.S.C. § 4501(a)(1); 10 C.F.R. § 205.280 (1988).
 
 
 4
 Following an extensive audit of ARCO's operations, DOE instituted a section 209 public enforcement action against ARCO. In that action, DOE alleged that ARCO had violated the price and allocation regulations and overcharged its customers about $985 million. See, e.g., Atl. Richfield Co., 25 DOE ¶ 85,101 (Apr. 15, 1996); Proposed Consent Order with Atl. Richfield Co., 50 Fed.Reg. 8,368 (Mar. 1, 1985). On June 27, 1985, DOE and ARCO entered into a consent order under which ARCO remitted just over $68 million to DOE. Of that amount, DOE placed approximately $46 million into a consent fund to provide refunds to purchasers of ARCO's refined products. Sinclair seeks a refund from that fund in this case.
 
 
 5
 Under the subpart V regulations, DOE conducts proceedings to identify persons injured by actual or alleged violation of the pricing and allocation regulations, to establish the extent of that injury, and to make restitution. 15 U.S.C. § 4502(b). The subpart V regulations require DOE to issue a final order on refund proceedings after a period of notice and comment. 10 C.F.R. § 205.282(c)-(d). The final order "shall take into account the desirability of distributing the refunds in an efficient, effective and equitable manner and resolving to the maximum extent practicable all outstanding claims. In order to do so, the standards for evaluation of individual claims may be based upon appropriate presumptions." 10 C.F.R. § 205.282(e).
 
 
 6
 Under PODRA, DOE published a final order instituting refund procedures for the ARCO violation. Atl. Richfield Co., 17 DOE ¶ 85,069 (Jan. 28, 1988). The order established a presumption in favor of equal dispersal of ARCO's overcharges among all its refined product sales during the consent order period — the "volumetric presumption." Id. at ¶ 88,151. This presumption required a claimant to document the number of gallons purchased from ARCO during the consent order period and the overcharges on those purchases. Id. at ¶ 88,153. The order also required the claimant to show that market conditions forced it to absorb the alleged overcharges. Id. The procedures presumed, nevertheless, that the claimant absorbed the overcharges where the claimant purchased ARCO's products at a price exceeding the average market prices for the same level of distribution. Id. To the extent that the claimant satisfied these criteria, the claimant could obtain a refund amount determined as the number of gallons bought from ARCO during the consent order period multiplied by a volumetric factor of $0.000735 per gallon. Id. at ¶ 88,151. DOE calculated this volumetric factor by dividing the value of the consent fund by the number of gallons of covered products sold by ARCO during the consent period.
 
 
 7
 DOE's order also permitted a claimant injured in excess of the volumetric refund to pursue a refund beyond the volumetric amount. Id. To obtain an above-volumetric refund, however, the claimant had to show that it incurred a disproportionate share of the alleged overcharges. Id.
 
 
 8
 On July 19, 1988, Sinclair filed a section 210 private action against ARCO in the United States District Court for the District of Utah that was consolidated into a pending class action suit, Van Vranken v. Atl. Richfield Co., No. C-79-0627. Sinclair maintained only those claims for which the Van Vranken suit tolled the statute of limitations. On August 9, 1991, Sinclair and ARCO entered a settlement agreement in which ARCO paid Sinclair $1.6 million in return for a dismissal of pending claims and forbearance from any further prosecution against ARCO under the ESA, EPAA, or MPPAR. That settlement provided in relevant part:
 
 
 9
 1(a) Sinclair hereby expressly and unconditionally releases all claims it has or may have against ARCO under the Economic Stabilization ACT ("ESA"), Emergency Petroleum Allocation Act ("EPAA"), or the federal mandatory petroleum price and allocation regulations promulgated thereunder, whether such claims are presently known or unknown.
 
 
 10
 (b) The release referred to in Paragraph 1(a) shall not apply to any effort by Sinclair to seek a refund in a proceeding conducted by the Department of Energy under 10 CFR, Part 205, Subpart V.
 
 
 11
 (c) ARCO shall unconditionally release Sinclair from any claims arising under the federal price control program referred to in Paragraph 1(a) or arising out of [this action]. This release shall not, however, apply to any claims that ARCO may have under the Entitlements Program.
 
 
 12
 Agreement of Settlement and Release, ¶ 1 (August 9, 1991), in Sinclair Oil Corp. v. Atl. Richfield Co., No. C-89-20760-SW (N.D.Cal.1991) (ARCO settlement).
 
 
 13
 On May 1, 1989, Sinclair filed a subpart V application for a volumetric refund of $987,105, based upon its purchase of 1.336 billion gallons of gasoline from ARCO during the consent agreement period. On July 18, 1991, DOE issued a proposed decision and order tentatively denying Sinclair's request because Sinclair was not presently and actually injured, as required by the final order instituting refund procedures for the ARCO violation. The proposed order reasoned that Sinclair could not have been injured by ARCO's alleged overcharges because Sinclair had received entitlements exception relief under the Old Oil Entitlements Program (Delta/Beacon relief) during that entire period.[1] Delta/Beacon relief ensured that Sinclair's profitability would not fall below the lesser of its historical profit margin or historical return on invested capital. DOE found no harm to Sinclair because Delta/Beacon relief insulated it from the effects of ARCO's alleged overcharges.
 
 
 14
 Following additional proceedings and a long delay, DOE issued its final decision on April 15, 1996, in response to a mandamus order obtained by Sinclair. Atl. Richfield Co., 25 DOE ¶ 85,101 (Apr. 15, 1996). In the final decision, DOE rejected Sinclair's refund application on several alternative grounds — that Delta/Beacon relief had insulated it from any injury, that Sinclair's private settlement with ARCO had eliminated its legal injury, that a DOE competitive disadvantage analysis showed no injury, and that, even if the private settlement agreement did not extinguish Sinclair's legal injury, PODRA would entirely offset Sinclair's proposed refund of $987,105 with the $1.6 million Sinclair received from its private settlement with ARCO.
 
 
 15
 Sinclair appealed to the district court which set aside the final decision and remanded to DOE for a determination of relief. Sinclair Oil Corp. v. O'Leary, No. 96-CV-1032-J (D.Wyo. Sept. 5, 2000). DOE appeals the district court decision. This court has jurisdiction under 28 U.S.C. §§ 1295(11), (12) (1994).
 
 II.
 
 16
 This court reviews without deference the conclusions of the district court regarding DOE action. Amoco Corp. v. Watkins, 912 F.2d 472, 475 (Temp.Emer.Ct.App.1990). In cases arising under 28 U.S.C. § 1295(a)(11)-(14) (1994), this court has adopted as controlling precedent the holdings of the Temporary Emergency Court of Appeals. Tex. Am. Oil Corp. v. Dep't of Energy, 44 F.3d 1557, 1561 (Fed.Cir.1995) (en banc). Under those precedents, this court recognizes DOE's administrative expertise, accords the department great deference, and approves DOE's action as long as a rational basis and substantial evidence support the determination. Phoenix Petroleum Co. v. Fed. Energy Regulatory Comm'n, 95 F.3d 1555, 1567 (Fed.Cir.1996); see also Siegel Oil Co. v. Richardson, 208 F.3d 1366, 1371 (Fed.Cir.2000). This court also gives substantial deference to DOE's interpretation of its regulations. Goodyear Tire & Rubber Co. v. Dep't of Energy, 118 F.3d 1531, 1539 (Fed.Cir.1997); see also United States v. Mead Corp., 533 U.S. 218, 227-231, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).
 
 A.
 
 17
 This court enunciated the principles that control this case in Rio Grande, El Paso and Santa Fe Railroad Co. v. Department of Energy, 234 F.3d 1 (Fed.Cir. 2000). In that case, the Rio Grande, El Paso and Santa Fe Railroad Co. (Santa Fe) filed a private overcharge action under § 210 of ESA against Shell Oil Company (Shell). After the district court held Santa Fe's claims time barred, Santa Fe settled its suit with Shell. Based upon that settlement, the district court dismissed Santa Fe's action. Later DOE instituted a section 209 public enforcement action against Shell. As a result of that action, DOE and Shell entered into a consent agreement under which Shell paid over $20 million into a consent fund to benefit victims of Shell's alleged violations. As in this case, DOE set up refund procedures to govern fund disbursement. Under those procedures, a party could apply for either a volumetric refund or an above-volumetric refund. For the volumetric refund, the applicant needed to demonstrate only the quantity of its purchases from Shell because the procedures presumed both injury and the extent of that injury. However, the procedures provided no such presumption to an applicant for an above-volumetric refund. For an above-volumetric recovery, an applicant had to show the extent of actual injury.
 
 
 18
 Under those procedures, Santa Fe sought an above-volumetric refund. DOE refused that refund request, however, because Santa Fe had settled its claim with Shell. Thus, Santa Fe was no longer an injured party within the meaning of PODRA. Santa Fe appealed to this court, which affirmed the denial of Santa Fe's refund request because "as a result of [its] settlement with Shell, Santa Fe is no longer a `person[] injured by any actual or alleged violation of the petroleum pricing and allocation regulations.'" Santa Fe, 234 F.3d at 6 (quoting 15 U.S.C. § 4502(b)(1)(A) (1994)). In sum, Santa Fe stands for the proposition that a claimant's unconditional release under a settlement agreement extinguishes the claimant's legal injury. Id. at 6-7; see also W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc., 977 F.2d 558, 560 (Fed.Cir.1992) (stating that a consent order embodying a settlement agreement is a final judgment "accompanied by finality as stark as an adjudication after full trial"); Hartley v. Mentor Corp., 869 F.2d 1469, 1473 (Fed.Cir.1989) (indicating that a dismissal of a claim with prejudice pursuant to a negotiated settlement is an adverse adjudication on the merits of the claim).
 
 
 19
 In Santa Fe, an above-volumetric refund was sought, whereas here Sinclair seeks a volumetric refund. However, as in Santa Fe, the claimant here must show injury. That is because the final order instituting refund procedures for the ARCO violation requires proof of injury for a volumetric refund. While the volumetric refund "presumption" may alleviate Sinclair's burden of proving that it absorbed any overcharges, Sinclair still must show that it purchased ARCO products at a price above average market price for comparable distribution amounts to receive a volumetric refund. Atl. Richfield Co., 17 DOE ¶ 88,153. Thus, although Santa Fe claimed an above-volumetric refund, the cases nonetheless are comparable because DOE was required in both to find that the claimant was injured. Id. Like Santa Fe, Sinclair seeks a PODRA refund predicated upon a showing of actual and present injury. Also like Santa Fe, Sinclair seeks its refund after settling its private suit on claims essentially identical to those now proffered to support its PODRA claim. Sinclair insists, however, that unlike the situation in Santa Fe, its settlement agreement did "not apply to any effort by Sinclair to seek a refund in a proceeding conducted by the Department of Energy under 10 CFR, Part 205, Subpart V." ARCO Settlement at ¶ 1(b). Nevertheless, Sinclair settled with ARCO essentially the same claims for which it now seeks a PODRA refund. Hence, Sinclair simply is no longer a "person[] injured by any actual or alleged violation of the petroleum pricing and allocation regulations." 15 U.S.C. § 4502(b)(1)(A).
 
 
 20
 More specifically, Sinclair agreed in the ARCO settlement to "release[] all claims it has or may have against ARCO under the Economic Stabilization ACT (`ESA'), Emergency Petroleum Allocation Act (`EPAA'), or the federal mandatory petroleum price and allocation regulations" in exchange for consideration provided by ARCO. ARCO settlement at ¶ 1(a) (emphasis added). Sinclair does not dispute the validity of the ARCO settlement.[2] Cf. Santa Fe, 234 F.3d at 7 (A party may not "collaterally attack [a] settlement's ability to provide full compensation for ... alleged injuries without showing that the settlement was not a valid, binding contract."). To prevail here, therefore, Sinclair must show that the injury for which it now claims remedy is different than that extinguished by the ARCO settlement. However, a volumetric refund by its terms subsumes any and all violations that might have caused Sinclair injury in dealings with ARCO. See, e.g., 17 DOE ¶ 85,069 (Jan. 28, 1988) (refunds are designed to "remedy the effects of actual or alleged violations of the DOE regulations" by ARCO). This includes injuries that otherwise would be time barred due to applicable statutes of limitations. Similarly, the claimed above-volumetric refund in Santa Fe subsumed any and all violations that might have caused Santa Fe injury in dealing with Shell. Quite simply, the scope of Sinclair's ARCO settlement and its volumetric refund claim are coterminous. Hence, when the ARCO settlement extinguished claims under ESA, EPAA, and other price regulations, it also extinguished Sinclair's current claim for a volumetric refund.
 
 B.
 
 21
 Even if the ARCO settlement did not itself extinguish entirely Sinclair's injury, DOE also decided that the $1.6 million settlement amount offsets fully any volumetric refund. This court upholds that decision as both rational and based on substantial evidence.
 
 
 22
 To obtain a volumetric refund under the ARCO refund procedures, a claimant must show overcharges and market conditions that forced absorption of those overcharges. As described earlier, however, the procedures presume that the claimant absorbed the overcharges when it purchased ARCO's products at a price exceeding the average market prices for the same distribution level. In essence, the procedures limit a claimant to its volumetric share of the refund pool. A claimant injured in excess of its volumetric share may pursue, in the alternative, an above-volumetric refund by proving that it incurred a disproportionate share of the alleged overcharges.
 
 
 23
 In this case, Sinclair seeks a refund under the volumetric share presumption. Sinclair also seeks to apply its $1.6 million settlement amount to offset only overcharges that it alleges, but does not prove, are in excess of its volumetric share. Cf. Van Vranken v. Atl. Richfield Co., 699 F.Supp. 1420, 1428 (N.D.Cal.1988) (noting that unrestricted recovery from both DOE consent order funds and from a private law suit "would permit an excess of recovery"), aff'd, 890 F.2d 421 (Temp.Emer.Ct.App.1989); Restatement (Second) of Judgments §§ 24(2), 25 (1982). In essence, Sinclair seeks to preserve its full volumetric refund by relying on an above-volumetric injury without meeting the associated burden of proof.
 
 
 24
 Sinclair seeks a $987,105 refund equal to its full volumetric share of the $46,387,976 consent order fund. At the same time, Sinclair seeks to apply its $1.6 million ARCO settlement to offset $20.8 million in overcharges that Sinclair alleges it incurred but has not proved.[3] Sinclair may not have it both ways. If it wishes to claim a volumetric refund to forego proving its disproportionate injury, Sinclair must also accept that any offset will apply to that presumed injury. Sinclair may, of course, rely on disproportionate overcharges — if proved under DOE's alternative procedures for above-volumetric refunds. After Sinclair has made such a showing, then it may assert an offset of its settlement amount based on the above-volumetric overcharges.
 
 CONCLUSION
 
 25
 This court holds, therefore, that the ARCO settlement extinguished the legal basis for Sinclair's volumetric refund. Moreover, the $1.6 million that Sinclair received in the ARCO settlement also would fully offset Sinclair's asserted $987,105 volumetric refund. Hence, DOE's denial of Sinclair's claim for a volumetric refund clearly was rational and supported by substantial evidence.
 
 COSTS
 
 26
 Each party shall bear its own costs.
 
 
 27
 
 REVERSED.
 
 
 
 
 Notes:
 
 
 [1]
 The Old Oil Entitlements Program was designed to equalize access to "old," i.e., low cost, price-controlled domestic crude oil. 10 C.F.R. § 211.67 (1995). It required refiners with greater than average access to low cost, old crude oil to purchase entitlements from firms that were forced to rely upon more costly imported or uncontrolled domestic crude oil. 39 Fed.Reg. 42,245-50. "Delta/Beacon" refers to a line of cases which developed the standards for entitlements exception relief granted to small and independent refiners such as Sinclair's predecessor in interest, Little America Refining CoDelta Ref. Co., 2 FEA ¶ 83,275 at 83,880-85 (1975); Beacon Oil Co., 3 FEA ¶ 83,209 at 83,824-30 (1976).
 
 
 [2]
 Sinclair's settlement agreement with ARCO is an ordinary contract and cannot bind the United States or any other third partySee Tiburzi v. Dep't of Justice, 269 F.3d 1346, 1351 (Fed.Cir.2001) ("It is `axiomatic that a settlement agreement is a contract.'" (quoting Greco v. Dep't of the Army, 852 F.2d 558, 560 (Fed.Cir.1988))); Foreman v. Dep't of the Army, 241 F.3d 1349, 1351 (Fed.Cir.2001) ("A settlement agreement may not impose obligations upon a third party ... without its consent.").
 
 
 [3]
 Sinclair derives the figure of $20.8 million as its volumetric share of $985 million that DOE initially asserted ARCO had overcharged its customers. Proposed Consent Order with Atlantic Richfield Co., 50 Fed.Reg. 8,368 (Mar. 1, 1985); DOE abandoned that claim, however, during the proceedings that led to the ARCO consent agreement and ARCO's payment of about $68 million into the refund poolId. As such, Sinclair's allegation of $20.8 million in actual overcharges is an insufficient basis for its claim here.
 
 
 
 28
 PAULINE NEWMAN, Circuit Judge, dissenting.
 
 
 29
 I respectfully dissent. The panel's opinion ignores the opinion that is here appealed, Sinclair Oil Corp. v. O'Leary, No. 96-CV-1032-J (D.Wyo. Sept. 5, 2000); instead, the court starts afresh, deciding the case and reversing the judgment while considering only one of the major issues that contributed to the district court's conclusion. Thus my colleagues on this panel treat the matter as a simple case of private settlement — yet refuse to give effect to the explicit terms of the private settlement agreement.
 
 
 30
 As the district court discussed in meticulous detail, upon consideration of several material aspects that the panel majority does not mention, the overcharge liability for which Sinclair seeks recovery from the Department of Energy ("DOE") is not the same liability as was settled in the private action between Sinclair and Atlantic Richfield Company ("ARCO"). This status was explicitly recognized in the settlement agreement, and was further illustrated in assorted ancillary litigation, including Sinclair Oil Corp. v. Atlantic Richfield Co., 720 F.Supp. 894 (D.Utah 1989), and Van Vranken v. United States Department of Energy, 882 F.2d 514 (Temp.Emer.Ct.App.1989).
 
 
 31
 The settlement between Sinclair and ARCO stated that the release therein "shall not apply to any effort by Sinclair to seek a refund in a proceeding conducted by the Department of Energy ...". It is now well recognized that private actions under Section 210 of the ESA are distinct from refund proceedings against the DOE under Section 209. See, e.g., Van Vranken, 882 F.2d at 516 (holding that the district court erred by blurring "the statutory distinction between public and private enforcement remedies embodied in the distinction between section 209 and section 210"). No appellate decision, whether of the Temporary Emergency Court of Appeals or of the Federal Circuit, has denied recovery by or from the DOE based on a private settlement of issues distinct from those relied on before the DOE.
 
 
 32
 In this case, the concurrent action by Sinclair under the Section 209 refund procedure (Subpart V of the regulations) was recognized in the private settlement agreement. The Section 209 action could not have been settled in the private action, and indeed its pendency, and continuation, were acknowledged. Thus the panel majority errs in relying on Rio Grande, El Paso and Santa Fe Railroad Co. v. Department of Energy, 234 F.3d 1 (Fed.Cir. 2000) as precluding this action. The distinctions from Santa Fe are manifold, and grounded in the fundamentals of contract law as well as in the policy underlying the provision in the ESA of both public and private remedy.
 
 
 33
 I agree with my colleagues on the panel that double recovery for the same overcharge is not available. However, my colleagues do not mention the district court's finding that these are not the same overcharges. The recovery now sought relates to charges for which private remedy was barred by the statute of limitations. The Utah district court had ruled that the statute of limitations had expired on at least thirteen of ARCO's alleged violations, and that these expired claims did not arise out of the same occurrence or transaction as the only surviving claim. Sinclair, 720 F.Supp. at 915-19. Indeed, the DOE had agreed before the Wyoming district court that the ARCO-Sinclair settlement agreement "had no bearing" on Sinclair's eligibility to apply for this Section 209 refund. Sinclair, slip op. at 18. This critical admission of itself negates my colleagues' ruling that Sinclair had already settled the issues of this suit.
 
 
 34
 The district court observed that "fundamentals of contract interpretation do not permit the DOE `to pick and choose among the provisions of Sinclair's settlement agreement and decide which terms it will give effect to and which terms it will ignore.'" Id. at 21. The principles of contract law require that effect be given to all settlement terms. The settlement agreement recognized that this Section 209 refund proceeding had been initiated before the settlement and was ongoing at the time of the settlement; its subject matter was expressly excepted from the settlement agreement. This is a dispositive distinction from the contract in Santa Fe on which the panel majority so heavily relies.
 
 
 35
 The panel majority finds that Sinclair was fully compensated by the settlement because the "scope of Sinclair's ARCO settlement and its volumetric refund claim are coterminous." This ignores the undisputed fact that the statute of limitations had barred at least thirteen claims from the ARCO litigation, and disregards the district court's finding that the instant suit under Section 209 relates to overcharges different from those recovered by the ARCO-Sinclair settlement agreement.
 
 
 36
 This is a complex case, having a voluminous record, extensive litigation in several forums, and a lengthy district court proceeding culminating in a full determination, on correct law and undisputed or well-found facts. This complexity does not emerge from the panel's opinion. The district court's analysis, findings, and conclusions have not been shown to be incorrect; they require affirmance.